## Leopold J. Kadish
### v.
## Chicago Co-Operative Brewing Association et al.

### Adolf Kraus et al.
### v.
## John B. Raulston, Receiver.

*Insolvency—Receiver—Attorneys' Fees—Payment of, out of Funds of Estate.*

1. It is well settled as a general rule in courts of equity, that where one person institutes legal proceedings for himself and others, and thereby secures a fund for the common benefit of all, an allowance will be made to him for costs and expenses necessarily incurred.

2. Upon a petition filed by attorneys who acted as solicitors for complainant in a bill in behalf of himself and other creditors and stockholders of an insolvent corporation for the appointment of a receiver, and the winding up of the same, that their fees should be paid by such receiver out of the funds in his hands, this court holds in view of the fact that it was greatly to the interest of complainant that the assets of the estate should be husbanded, the allowance of such fees would be unwarranted upon the ground that the taking of such action was a benefit to the estate.

[Opinion filed March 10, 1890.]

APPEAL from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding.

Messrs. KRAUS, MAYER & STEIN, appellants, *pro se.*

The distinction drawn by the court between services rendered and not rendered at the receiver's request, is unsound and untenable under the circumstances of this case.

As the record shows, all parties *agreed* to the appointment of Mr. Raulston as receiver, and acquiesced in his taking charge of and managing the affairs of the corporation, and collecting and distributing its assets. They reaped the benefit. Had it not been for the opportune appointment of the receiver and the issuing of the injunction on the application of complainant presented by appellants as his solicitors, the 1,800 barrels of beer in process of manufacture which the receiver afterward sold for $6,000, would have gone to waste and become utterly worthless, and the balance of the estate would have been dissipated by the quarreling directors in the shape of preferences or lost all value under their continued mismanagement. It was the action of complainant and appellants alone that preserved this large estate to the interested parties. Whitsett v. City, etc., Association, 3 Tenn. Chy., decided in 1877, is exactly in point. There the bill had also been "filed by a stockholder of the defendant company, as well for all other stockholders and creditors of the company as for himself, to wind up its business," and it was held that such a person who "succeeds in securing a fund for the common benefit of all, will be entitled to an allowance for all expenses and costs incurred, including reasonable counsel fees.". The court refers to a large number of English and American cases, in which substantially the same rule has been recognized and applied, notably to Mason v. Codwise, 6 Johns. Ch. 277, opinion by Chancellor Kent. And see Rains v. Rainey, 11 Humph. 261; *ex parte* Plitt et al., 2 Wall. Jr. (W. S. C. C.) 453; 2 Dan. Ch. Pr. (5th Am. Ed.) *1213, 1214, 1411, 1422; High on Receivers (2d Ed.), Sec. 805.

Daniell,*1411, *supra*, says : "As a general rule, wherever an estate or fund is administered by the court, the costs of all necessary and proper parties to the proceedings are a first charge, and must be defrayed thereout, before the claims of the persons beneficially entitled thereto are satisfied. But the costs only of those proceedings which were in their origin properly directed for the benefit of the estate will be directed to be thus paid." ( The word " costs," as here used, includes counsel fees : *ex parte* Plitt, *supra*, p. 478.) According to High, *supra*, " receivers are entitled in the settlement of their accounts to payments made on account of legal services and counsel fees. And such fees, when paid by the receiver in good faith, the disbursements being necessary and beneficial to the parties ultimately entitled to the fund, should be paid from such fund." In *ex parte* Plitt, *supra*, a fund under the control of a court of equity was declared to be "subject to three classes of charge: First, the necessary expenses of ascertaining it and reducing it into possession; second, a reasonable compensation for its safe-keeping and the supervision of its interests; third, the expenses of ascertaining the proper distributees and making distribution among them." Under the first head the court allowed $1,000 to one Aspden "for his vigilant and effective service in securing a very large amount of money to the estate, and in lieu of all expenses incurred by him in and about the same."

The rule has been constantly applied in involuntary bankruptcy proceedings, upon the following grounds (Bump on Bankruptcy, 4th Ed., 220, 221): "Cases in involuntary bankruptcy are for the benefit equally of all the creditors, and it is considered unjust and inequitable to throw all the expenses upon the petitioning creditor while permitting the other creditors to share equally in the benefits and advantages of the proceedings. Such a course would not effect a due distribution of the estate. The unbroken current of decisions and the uniform practice allow him his reasonable expenses out of the fund before any distribution is made. In this way all the creditors are compelled to bear their due proportion of the burden while they share in the advantages." *In re* Williams,

2 B. R., 83 (*28); *in re* Waite and Crocker, 2 B. R. 452 (*146); *in re* Schwab, 2 B. R. 488 (*155); *in re* Mitteldorfer, 3 B. R. 1.

Although, as pointed out in *in re* Waite and Crocker, *supra*, the bankruptcy act did not in terms sanction the payment of counsel fees out of the fund, yet the Federal courts, in analogy to the practice of the court of chancery, have always allowed it to be done. Indeed, the equity in favor of the moving creditor is so strong that it could not well have been otherwise. In the language of the court in *in re* Williams, *supra*, "such creditor is the champion of all creditors who choose to avail themselves of the benefit of the suit. Shall they do so without making the *pro rata* contribution to the expenses of the suit (as in our court of chancery) which has secured them a share in the bankrupt's estate? And shall the creditor who has (as in this case) rescued the estate and made the fund for the benefit of the general creditors, be alone excluded from the general benefit? Shall he who is thus a common benefactor be made a martyr and a scape-goat? Shall he bear the whole burden and reap scarcely any—if any—benefit? Not, certainly, if the bankrupt act is founded in justice, and its policy is to be enforced."

Messrs. Hoyne, Follansbee & O'Connor, for John B. Raulston, Receiver.

Moran, J. A petition was filed in this case by Kraus, Mayer & Stein, who were solicitors for complainant, in a bill filed in behalf of himself as a creditor and stockholder of the Brewing Association, and in behalf of all others similarly interested, to have a receiver appointed for the assets of the association and to wind up its affairs, asking that the services of said petitioners rendered in preparing and filing the original bill and amending the same and procuring the appointment of a receiver and in substituting another person as receiver in place of the one first appointed, and enjoining proceedings against stockholders, should be paid by the receiver out of the fund in his hands, on the ground that the services so rendered inured to the benefit of the estate.

The itemized bill for the services attached to the petition is as follows:

"Chicago, May 10, 1889.

Estate of Chicago Brewing Association,
    To Kraus, Mayer & Stein, Dr.,
        Attorneys and Counselors at Law,
Room 7–12, Nos. 77 and 79 Clark Street.

To services in preparing and filing bill of complaint and obtaining order for appointment of receiver thereon, etc......................................................$350 00

To services in and about substituting present receiver for the one first appointed, and drawing order in that regard.................................... 50 00

To services in matter of enjoining proceedings against stockholders.................................. 50 00

To services in preparing and filing two amendments to bill of complaint.............................. 25 00

                                                    $475 00"

The matter was referred to the master to take proof, and he recommended the allowance of the bill and the payment thereof by the receiver, but on the hearing the court was of opinion that the receiver should pay only for the last two items in said bill, in all $75, and denied the prayer of the petition as to the other items of said bill, and ordered said petition dismissed except as to said sum of $75. To review this order the appeal is prosecuted, and it is strenuously urged that said Kadish, complainant in the bill, took an opportune step in filing the bill and having the receiver appointed, and by such action preserved to the estate and the interested parties a considerable amount of assets which might otherwise have been dissipated and lost, and that he therefore has an equity to have the expenses he incurred for the services of solicitors allowed from the funds of the estate. It appears from the report of the receiver that he has realized on the assets some $47,000 from real estate as well as from personal property, but it does not appear in this record how much from each. It is claimed that some 1,800 barrels of beer were

prevented from becoming wasted by having the receiver appointed at the time it was done.

It is, no doubt, as counsel contends, well settled as a general doctrine in courts of equity, that where one person institutes legal proceedings for himself and others, and thereby secures a fund for the common benefit of all, an allowance will be made to him for costs and expenses necessarily incurred. 2 Daniell's Ch. Pr. 1411; Whitsett v. City B. & Assoc., 3 Tenn. Ch. 526.

The principle has been frequently enforced in behalf of complainants in creditors' bills, where the proceedings are for the common interest, and proceed upon an implication of agency on the part of the party proceeding for the benefit of others, when they come in and avail themselves of the benefit of his acts. In such cases there are plain principles of equity underlying the allowing of such expenses; but on examination of this record, we are of opinion that such equity does not exist in favor of this complainant.

It is true that the bill shows that he is a creditor, and that there are other creditors; and so far he would appear to have a common interest only with others in saving and applying the property of the corporation. But the record further shows that the capital stock of the corporation consists of 1,000 shares of $100 each, that only 275 of the shares issued have been paid for, and that only $26,060 was paid in on capital stock. It further shows that complainant holds 599 shares of the capital stock of the company which was issued to him as collateral security for the debt due him from the corporation. On these shares of stock complainant is liable to the general creditors of the corporation. Wheelock v. Kost et al., 77 Ill. 296; Pullman v. Upton, 96 U. S. 328.

While, therefore, he had an interest to the extent of about $17,000 in common with creditors, he had an interest to the extent of nearly $60,000 which was individual to himself, and was pressing upon him to see that the debts of the corporation were paid out of the property in its hands.

It does not appear from this record that any of the creditors have been paid in full, nor what per cent has been paid on

the debts. We infer that the unpaid stock has not been called on for contribution, and as we have said, if called on it would be liable to make up a deficiency for the payment of debts in the general assets, and in such an event complainant Kadish would, as the record stands, be the chief and practically the only person liable. Under such circumstances we do not perceive what equity he has to require his solicitors' fees to be paid out of the funds raised from the general assets for the benefit of creditors. He was above all persons interested in husbanding those assets, for to the extent that he succeeded in doing so he was diminishing his personal liability to such creditors. It would appear to be in consonance with strict justice to leave him to pay his own solicitors for steps taken by them which were so manifestly for his own protection.

We are therefore of opinion that the order of the court below refusing to pay said solicitors out of the funds in the hands of the receiver was correct, and it will be affirmed.

*Order affirmed.*