## Gustave A. Stahl et al., Appellees, v. Robert G. Stahl et al., Appellants.

## Gen. No. 15,880.

1. APPEALS AND ERRORS—*when certificate of evidence not stricken.* *Held,* that the certificate of evidence should not be stricken where it appeared that the evidence contained therein was before the master and the court and considered by them and likewise is extensively quoted on appeal by the party moving to strike.

2. SUBROGATION—*who not entitled to.*    Subrogation will not be granted in favor of one who shows no contract to support the claim and there are no special conditions which require that a court of equity should recognize such claim.

3. TRUSTS—*propriety of allowance of solicitors' fees out of fund.* It is proper to allow out of a trust fund before distribution fees for legal services in establishing and preserving the trust.

4. MASTERS IN CHANCERY—*when allowance of fees proper.*    *Held,* in this case, that the allowance of master's fees to the amount of $450 is proper and within the statute.

Partition.    Appeal from the Superior Court of Cook county; the HON. BEN M. SMITH, Judge, presiding.    Heard in the Branch Appellate Court at the October term, 1909.    Affirmed.    Opinion filed November 28, 1911.    *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.**    This appeal brings before us for review a decree of the Superior Court of Cook county, entered July 12, 1909, ordering a partition of certain premises, (which are known as No. 15 Blue Island avenue, Chicago), as prayed for in the bill, and dismissing for want of equity, a cross-bill filed by one of the defendants, Frank A. Stahl.

On August 18, 1900, Fredericka L. Stahl, the mother of most of the parties to this litigation, conveyed the

real estate in question to her son, Frank A. Stahl (cross-complainant) by warranty deed. She died February 11, 1901. On the 5th of September, 1902, Frank A. Stahl conveyed the premises by warranty deed to his brother, John Stahl.

November 2, 1903, Gustave A. Stahl, another brother, filed a bill in the Superior Court, making defendants therein all his brothers and sisters and the tenants of the premises in question. This bill averred that Fredericka L. Stahl died intestate, leaving her surviving as her only heirs at law, Emma O. Haas, Robert G. Stahl, Louisa F. Righeimer, Frederick W. Stahl, Frank A. Stahl, John Stahl, and the complainant, Gustave A. Stahl.

It further averred that the estate of Fredericka L. Stahl had never been administered. It set out the two deeds mentioned and sought to have them both set aside upon the ground that they were fraudulent as against the other children, and asked for an accounting, averring that Fredericka L. Stahl was induced to execute the first deed by her son, Frank A., while she was, in fact, under improper restraint and undue influence, in her dotage, and with her mind so impaired that she was incapable of comprehending the effect of the deed, —and that the second deed was without consideration and accepted with notice and in fraud of the rights of complainant.

Louisa F. Righeimer, a sister, became a co-complainant with her brother, Gustave A. Stahl. Answers were filed by Frank A., John and Frederick W. Stahl, and Emma O. Haas, in which they denied the allegations of fraud and undue influence. The bill was subsequently so amended as to charge that the conveyance was inequitably made by the mother to Frank A. Stahl, without any consideration, and was, in effect, made in trust for the benefit of the heirs of said Fredericka L. Stahl.

Upon a hearing, the court dismissed the bill on July 21, 1904, for want of equity, upon the ground that, though the court found the property was deeded to and held by the defendants, Frank A. and John Stahl, under an express parol agreement for the benefit of the heirs of Fredericka L. Stahl, yet as the Statute of Frauds had been pleaded, and as there was no writing to manifest the existence of such trust, said Statute of Frauds was an absolute bar to the proceeding.

On February 21, 1905, this decree was reversed by the Supreme Court (Stahl v. Stahl, 214 Ill. 131), that court holding, in substance, that the children of Fredericka L. Stahl were the equitable and beneficial owners of the property. The cause was remanded, and another decree was entered by Judge Kavanagh of the Superior Court April 11, 1905, in which it was provided that the court retain jurisdiction of the cause for the purpose of administering the trust estate, etc. This last decree was reversed by the Supreme Court (Stahl v. Stahl, 220 Ill. 188), and the court below was directed to enter a decree, embodying the conclusion of the Supreme Court, that the conveyances were constructively fraudulent and were, in equity, in trust for the benefit of all the children of Fredericka L. Stahl, and that each of said children had been, since the conveyance to Frank A. Stahl, the equitable owner of and entitled to the rent, income and profits of an undivided one-seventh part of the property in question, and requiring John Stahl to convey to each of the children, other than himself, an undivided one-seventh part thereof. Upon the mandate of the Supreme Court being filed, Judge Gary, in the Superior Court, entered a decree on March 27, 1906, in conformity therewith, and the bill was amended to pray for a partition of the real estate.

February 27, 1905, Emma O. Haas, one of the defendants in the original bill, filed a bill in the Circuit Court, praying for a partition of the property in question. This bill the Circuit Court dismissed, holding

that the Superior Court had first obtained jurisdiction of the parties and of the subject-matter. This action was affirmed by the Supreme Court. (Haas v. Righeimer, 220 Ill. 193.)

On the 23rd of February, 1905, Frederick W. Stahl was appointed administrator of his mother's estate, and there were allowed in Probate Court the claims of Frank A. Stahl, John Stahl, and Emma O. Haas, for large amounts. The administrator filed a petition to sell the real estate in question to pay debts. This petition was dismissed by the Probate Court for want of jurisdiction, and upon appeal, the Supreme Court approved the action of the Probate Court in dismissing the petition. (*In re* Estate of Fredericka L. Stahl, Decd., 227 Ill. 529.)

On the 27th of March, 1906, Gustave A. Stahl filed a verified petition in the original suit, alleging that on October 18, 1904, he had transferred his interest in the premises to Morse Ives, Esq., as security on account of service rendered and to be rendered in the cause; that on May 13, 1905, he had conveyed the remaining interest in the property to his wife, Emma M. Stahl, and praying that a conveyance be made to her of the share otherwise coming to him, subject to the rights of Ives. Emma M. Stahl and Morse Ives both appeared and were, on that date, substituted as complainants in lieu of Gustave A. Stahl. The bill was, at that time, amended to show, among other things, that one Hugo Munzer claimed the ownership of a one-seventh interest in the property, by reason of bankruptcy proceedings in the matter of Robert G. Stahl, bankrupt, in which Munzer claims to have purchased from the trustee in bankruptcy, the interest of said Robert G. Stahl to the premises in question.

The amendment further averred that the records of Cook county showed a trust deed, purporting to secure a note of Fredericka L. Stahl for $5,000, and alleging that the indebtedness secured thereby had been

fully paid; that, in fact, the indebtedness was that of Frank A. Stahl, and that the trust deed and note were executed for his benefit, and that he was primarily obligated to pay said indebtedness, which he had done on August 2, 1902, on which date the Northern Trust Company, trustee, executed and delivered to him a release of said trust deed, but that such release had never been recorded. By the amendment, it further appeared that Frederick W. Stahl, as administrator of the estate of Fredericka L. Stahl, claimed an interest in the real estate in question,—that is, the right to sell it for the benefit of certain alleged creditors, to-wit, Frank A. Stahl, John Stahl and Emma O. Haas.

The amendment further averred that complainants, Gustave A. Stahl and Louisa F. Righeimer, had expended large sums and incurred obligations for costs, disbursements, and solicitor's fees, to the amount of $4,000, in and about establishing the right of the parties in and about the cause in and to the property as a trust estate, and averred that said amount should be a just charge or lien upon the premises, to be first paid from the proceeds of any sale thereof, and prayed that an account might be taken of the expenses and obligations for costs, etc., incurred and to be incurred by the complainants in and about obtaining the relief prayed for, and that a partition of the property might be made.

On the 11th of April, 1906, answers were filed by all the defendants, except the Northern Trust Company, which had been made a party defendant and was subsequently defaulted, and except Frederick W. Stahl, administrator, who had been made a party and who answered later.

The answer of Frank A. Stahl and his cross-bill, filed October 27, 1906, did not admit that Hugo Munzer had any interest in the premises, but insisted that if he had any, it was subject to the claim of Frank A. Stahl against Robert C. Stahl for $200; admitted the trust

deed for $5,000 to the Northern Trust Company, and that the indebtedness and note secured thereby had been paid by Frank A. Stahl, but denied that the indebtedness was his own, or that the trust deed and note were executed for his benefit, or that he was under obligation to pay the indebtedness; admitted its payment and claimed that at the death of his mother on the 11th of February, 1901, he was in no way indebted or obligated to her, but that on the contrary, she was heavily indebted to him; that on August 2, 1897, he was not indebted to her at all.

The amended bill (designated in this record as "engrossed bill") was answered by Hugo Munzer, who admitted its allegations, except those averring that defendants were entitled to solicitor's fees for the establishing of a trust estate.

Defendants, Frank A. Stahl, John Stahl, Robert G. Stahl, Frederick W. Stahl, Emma O. Haas, and John F. Haas, filed answers consenting to a partition and accounting, but insisting that it should be subject to the payment of a claim of Frank A. Stahl for $5,000, plus accrued interest thereon, which had been paid by him to secure a release of the trust deed of the Northern Trust Company, on account of which Frank A. Stahl claimed to be equitably entitled to be subrogated to the rights of the Trust Company; also that the partition and accounting must be subject to the payment of the debts of the deceased, Fredericka L. Stahl, and to the claims of the creditors of any of the parties, and denying the right of Morse Ives, Esq., to the solicitor's fee claimed by him. The administrator, Frederick W. Stahl, answered, setting up the allowance of claims in favor of Frank A. Stahl, aggregating $4,489.25, John Stahl $4,125, and the additional claim of Frank A. Stahl, amounting to $7,596.43, for the payment of a note executed by the deceased, August 2, 1897, for $5,000, with interest thereon, already allowed in the Probate Court, and insisting that any partition or ac-

counting must be subject to the payment of the debts of the deceased.

October 27, 1906, Frank A. Stahl filed a cross-bill, alleging that he was not obligated to pay $5,000, but that on August 1, 1899, at the request of his mother, he paid the sum of $3,500 thereon, with the express understanding that he was to be subrogated to the rights of the Northern Trust Company, the then holder and owner of the $5,000 note and interest notes, and to its rights of foreclosure; that after the death of his mother, and believing himself to be the owner of the premises by virtue of her deed to him, dated August 18, 1900, he paid the remaining $1,500, on August 2, 1902, with interest; that his claim, therefor, aggregating $7,596.43, was allowed by the Probate Court against the estate of his mother, for which amount he prayed a foreclosure of the property in question; and he further averred that John Stahl recognized his claim upon the premises as a valid and subsisting lien.

By amendment, he alleged the insolvency of Gustave A. Stahl, Emma M. Stahl, and Louisa F. Righeimer, and prayed that the conveyance to Morse Ives and Emma M. Stahl be declared subject to the payment of the debts of Gustave A. and Emma M. Stahl.

The allegations of the cross-bill were confessed by all the defendants excepting Gustave A. Stahl, who disclaimed, and excepting also, Morse Ives, Emma M. Stahl, Louisa F. Righeimer, and Hugo Munzer, all of whom denied its allegations and insisted in addition that the cross-bill was multifarious, and not germane.

The cause was then referred to a master in chancery, who filed his report on July 24, 1908.

This report included an accounting, which showed a balance of $443.93, due from Frank A. Stahl, on account of rents collected by him, after allowing his commissions therefor, and showed due from John Stahl, $1,234.79, rents collected, after allowing his commissions therefor. The report also found that Morse

Ives, solicitor, was entitled to solicitor's fees for impressing a trust upon the property, and that said fee should be sixteen per cent. of the value of the trust estate.

As to the cross-bill, he found that in August, 1892, Fredericka L. Stahl borrowed the sum of $10,000 from the Northern Trust Company, which sum she gave to Frank A. Stahl, and which he used; that this loan was reduced by the payment of $4,000, prior to August 2, 1897, at which time a new loan was made by the Trust Company to her for the unpaid $6,000; that on August 2, 1897, she made a trust deed to the Trust Company, as trustee, to secure two notes, one for $1,000 and the other for $5,000, with interest at five and one-half per cent, conveying the property in question; that this $6,000 was paid by Frank A. Stahl, to whom the Trust Company delivered a release on August 4, 1902.

The master further found that the conveyance by warranty deed from Fredericka L. Stahl to Frank A. Stahl, which had theretofore been declared constructively fraudulent, was executed and delivered on August 18, 1900; that Fredericka L. Stahl died February 11, 1901; that the notes which were secured by the trust deed were paid in full on August 2, 1902; that Frank A. Stahl transferred the premises to his brother, John Stahl, on September 5, 1902; that on the trial before Judge Kavanagh, Frank A. Stahl had stated that he transferred his interest to his brother John Stahl, and that he then had no claim at all against the property, though now contending that during all of that time he had a claim against the premises for $6,000, and was entitled to be subrogated to the rights of the Northern Trust Company as trustee; that from August 2, 1902, until October 27, 1906, Frank A. Stahl made no attempt to assert his right to subrogation, although having in his possession the release deed which had never been filed; that said Frank A. Stahl contended he had a right to be subrogated because of an

oral agreement between his mother and himself, whereby she was to assume the payment of the notes secured by said trust deed, amounting to $6,000, although he was in fact the original debtor, the money having been given to him; that such alleged oral agreement between himself and his mother was made on account of alleged payments made by him to his brother, Gustave A. Stahl, at the request of his mother; that because of the numerous conflicting statements by Frank A. Stahl in his testimony, the master did not regard his evidence as entitled to much consideration; and accordingly the master found that the cross-complainant, Frank A. Stahl, was not entitled to be subrogated.

The master further found that cross-complainants, Frank A. Stahl, John Stahl and John F. Haas, introduced evidence to support certain individual claims against other parties to the suit, but that the court had no jurisdiction, in this proceeding, to pass upon claims of that character.

The master further found the respective interests of the parties to the suit in the trust property to be as follows: Emma Madeline Stahl (subject to the rights of Morse Ives), Frank A. Stahl, Frederick W. Stahl, Emma O. Haas, Louisa F. Righeimer, John Stahl, and Hugo Munzer, each entitled to one-seventh. The master found the material allegations of the bill proven, and recommended a decree in accordance therewith; and he further recommended that the cross-bill of Frank A. Stahl be dismissed, and that he be required to record the release deed in question.

To this report numerous objections were filed (which objections were allowed to stand as exceptions) and were heard and overruled by the court below on the 12th day of July, 1909, and there was then entered a decree in conformity with the master's report, requiring Dr. Frank A. Stahl to pay to the trust estate the sum of $443.93, John Stahl the sum of $1,234.79, and Emma O. Haas the sum of $553.50 for rent of the

premises down to the 27th day of March, 1906, and requiring her to account to herself as receiver of the premises, at the rate of $9 per month, from said last date to the date of the decree; directing the payment of solicitor's fees in the amount of sixteen per cent of the value of the trust estate to Morse Ives, solicitor for complainants, for establishing the trust; finding that cross-complainant, Dr. Frank A. Stahl, paid out the money set forth in his cross-bill and testimony, but that such sums were not advanced under any contract upon which a lien upon the premises can arise, and dismissing the cross-bill for want of equity, and directing him to forthwith file for record the said release deed; decreeing the respective interests of the parties in the trust property to be found by the master, and directing a partition of the premises to be made in conformity therewith, and appointing commissioners to make said partition, etc.

Appellants insist, first, that the court below erred in not granting the relief prayed for in the cross-bill of Frank A. Stahl; second, that the court below erroneously allowed Morse Ives, solicitor for the complainants, solicitor's fees to be paid out of the proceeds of the property; third, that the court erred in failing to find that the various parties to the suit are entitled upon the accounting, ''to receive the amounts of the respective claims by certain of the appellants, as against the other parties entitled under the decree of this court to a share of the proceeds of the property described in the bill of complaint herein;'' fourth, that the court below erred in failing to make Louisa F. Righeimer account for rent moneys and receipts appropriated by her; fifth, that the fees allowed the master in chancery are excessive and unreasonable; sixth, that the court erred in assessing the sum of $360 as costs against Frank A. Stahl, and the sum of $90 as costs against the defendants to the amended bill, who did not disclaim.

HENRY RUSSELL PLATT and JOHN FREDERICK HAAS, for appellants.

MORSE IVES and CAREY W. RHODES, for appellees.

MR. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

Shortly after their appeal was perfected, appellants made a motion to strike from the files the certificate of evidence, showing the testimony given on the trial before Judge Kavanagh in July, 1904. This motion this court denied on December 10, 1909; but it is now renewed by the appellants, who contend that the evidence is not properly a part of the record, and should not be considered by this court; however, it appears that appellants, in their briefs and arguments, themselves extensively quote from it; and it also appears that the master had it before him and considered it in making up his report. After due consideration of the motion, we feel compelled to again deny it.

The first and most important question brought before us by this appeal, is whether the court erred in refusing to grant relief upon the cross-bill filed by Dr. Frank A. Stahl, and in dismissing it for want of equity.

After a careful consideration of all the testimony in the case, we have reached the conclusion that there is no adequate justification in the record for a reversal of the decree of the court below. The claim of Frank A. Stahl rests almost exclusively upon his own testimony; the master expressly found that there was nothing else upon which it could be based. His testimony given in this case, if taken by itself, might easily warrant the court in granting the relief prayed for; but, if as held by the master and the court below, he had so far discredited himself by previous contradictory and inconsistent statements and contentions, as to neutralize and destroy the effect of his testimony upon the hearing, he has no one to blame but himself.

When this bill was first filed and a hearing was had upon it before Judge Kavanagh in July, 1904, Dr. Frank A. Stahl and John Stahl respectively were endeavoring to substantiate their claims of ownership of the premises in question. Dr. Frank A. Stahl claimed that his mother had conveyed it to him in satisfaction of his claims against her, and that by the conveyance he became its absolute owner, free from any claims on the part of any of his brothers or sisters. It was also claimed by him and John that by his conveyance to John, the latter acquired an indefeasible title to the property in question, free from all claims of the other heirs. Upon that hearing, the court found that the contentions of both Dr. Frank A. and John Stahl were not substantiated, but were false; that the deed from the mother, was as claimed in the bill, actually in trust for the benefit of all her children, and Judge Kavanagh so decreed. In this finding the Supreme Court concurred, its decision being rendered on the 21st day of February, 1905. Within two days thereafter Frederick W. Stahl, one of the defendants in the proceeding, was appointed administrator of his mother's estate, and it appears that while he was such administrator, there were allowed *ex parte* in the Probate Court, claims in behalf of appellants, aggregating about $18,-000, to pay which he endeavored to sell the premises in question. From an order of the Probate Court, dismissing his petition to sell the real estate, he appealed to the Supreme Court, where that action was affirmed. In the meantime, this cross-bill by Dr. Frank A. Stahl was filed, and all the appellants confessed its allegations to be true.

Waiving the questions that are raised by appellees here of merger of title in Frank A. Stahl; of *estoppel* (because of his warranty deed to John) to assert here a right of subrogation; and that by contesting complainants' rights upon the ground of alleged ownership of the premises, he is precluded from his claim here

by having elected his remedy; and that the subject-matter of his cross-bill is *res adjudicata*;—none of which do we decide,—we think the testimony in the case justifies the conclusion of the master and the court below.

The testimony of Frank A. and John Stahl given upon the hearing before Judge Kavanagh, and of Frank A. Stahl before Referee Wean, is so directly opposed to their present contentions as to challenge their right to be believed. While Frank A. Stahl is now claiming that he has an unsatisfied claim against the property for $7,596.43, growing out of an alleged agreement between his mother and himself, which he insists constituted a lien upon it, he and John then testified to a state of facts utterly inconsistent with such claim. Upon being recalled to the witness stand in the hearing before Judge Kavanagh, in July, 1904, and questioned by the court, Frank A. Stahl testified as follows:

"Q. Doctor, who owns that property now? A. My brother John.

Q. You have no claim upon it at all? A. No, sir.

Q. And was any agreement ever made between you and your brother as to your having any interest in it? A. No interest in it, absolutely.

Q. There is no paper in existence now of any character, showing you or anyone else having any interest in that property? A. No, John; he is the only one that has any interest, John."

Upon the same hearing, the court examined John Stahl, who testified as follows:

"Q. Now if you were to sell it, you would put the money in your own pocket? A. I certainly should.

Q. You wouldn't give him anything? A. It all depends.

Q. You would keep it all yourself? A. I would keep it all myself.

Q. Was there any understanding that you are to divide up or have any interest in that property between each other? A. Not a one.

"There is no understanding at all, in writing, of any character. It is absolutely my property without any condition at all attached. I have made no promise that I will at any time deed that property to him.

Q. Now so that there will be no mistake about it: That property was given to you by your own brother, was it? A. Yes.

Q. Without any condition of any character? A. There was no condition attached to it at all. He says, 'John,' he says, 'I give you this property, convey it to you, it is yours'. Frank was going to Europe at that time. He did not go. I still have title to that property. I have collected the rents and I have put them to my own account. I have not given him any, not a cent."

And while the record in this case established beyond controversy that the doctor paid $4,000 of the $10,-000 encumbrance in 1897, $1,000 in 1898, and $3,500 in 1899, and $1,500 in 1902, yet, when testifying before Referee Wean in June, 1905, Frank A. Stahl's testimony was shifty, equivocal, and utterly lacking in candor; he said:

"I don't remember when I paid any money last to the Northern Trust Company. It might have been in 1892, it might have been in 1893, it might have been in 1894, it might have been in 1895. I don't remember testifying when I was here before that the remaining portion of that $10,000 encumbrance was paid off by me. I don't know what the fact is in regard to that.

Q. You don't know whether it has been paid or not? A. I don't know now, no, sir.

Q. And yet you don't remember whether the notes were paid off at the bank or not? A. No, sir, not just now. You asked me for the exact date, and I don't remember it.

Q. I say any date, Doctor, do you remember of those notes being paid off? A. No, sir.

Q. Will you say they were not paid off? A. No, sir.

Q. The balance of the encumbrance in 1897, after you paid off the first portion of it, was how much? A. I don't remember.

Q. About how much? A. That I don't know.

Q. Do you have any recollection at all? A. Not just at present, no, sir.

Q. Don't you know that it was $6,000? A. No, sir.

Q. Don't you know that you said when you were here on the stand before that it was $6,000? A. If I did it is possible that I remembered it at that time; but I don't remember it now.

Q. You remembered it three weeks ago when you were here, and you don't remember it now? A. I don't know.

Q. Do you know, doctor, whether that encumbrance was reduced in amount in 1897? A. My recollection is now, yes, sir.

Q. How much? A. I don't know.

Q. About how much? A. I don't know.

Q. Have you any recollection in regard to it? If so what is the recollection? A. My recollection is that there was a reduction in the amount, and—that there was a certain amount of money borrowed in order to supply funds to pay for my brother's education in Europe.

Q. I didn't ask you about that? A. But you are asking me practically to refresh my memory.

Q. I am asking you if you recall the amount of the reduction. A. No, sir.

Q. Was it as much as one thousand dollars? A. I don't remember.

Q. Will you state now that you don't know whether it was as much as $1,000 or not? A. Yes, sir.

Q. Do you know, Doctor, whether any amount had been paid on that encumbrance since the title got into your name in 1900? A. What encumbrance have you reference to?

Q. The only encumbrance we are talking about. A. Well, if you define it, if you please, I will try to answer to the best of my ability.

Q. Do you know of any encumbrance on the property at 15 Blue Island avenue ever having been paid in whole or in part after the 18th day of August, 1900? A. I don't remember.

Q. Will you say, Doctor, that you don't remember ever having paid anything on that encumbrance after the title got into your name? A. I don't remember now, no, sir.

Q. Have you remembered at any time? A. I don't remember. I don't remember, sir.

Q. What is your recollection? What has happened? Is there anything that you can place why it is that your recollection is not as good today as it was when you first testified here? A. I suppose—I would not answer. What I mean by that is I have no explanation to offer. I don't know.

Q. You cannot explain why it is you then remembered and not now? A. I don't know."

In this very proceeding, Frank A. Stahl testified before the master in 1907, with reference to the payments made by him on the indebtedness to the Northern Trust Company:

"I always held this $5,000 indebtedness against her. That was one of the considerations for the conveyance of the property to me in 1900.

Q. Was that consideration mentioned at the time? A. Yes."

Upon the hearing before Judge Kavanagh, he had testified that he could not think of any reason why she should favor him with reference to her property rather than her son John; that there was no difference between his relation to his mother and that of the other children; that Gustave, her youngest son in Europe, was her favorite. At that time, it is clear that he did not regard himself as holding any claim of indebtedness against his mother, for he says: "She wanted to give me a mortgage to secure us on her property, and I said 'Mother, I don't want any indebtedness; I am perfectly willing to give you my last cent, and you can have

John's also. You have done for us all these years. You are welcome to every cent I have got.' "

Numerous other inconsistencies in the positions taken by Frank A. Stahl in the extended litigation over this property might be pointed out, but it is sufficient to say, that in our opinion, he is so far discredited as to warrant the master and the court in holding that he had not sustained the averments of his cross-bill.

Even if it be granted that he was generous in aiding his mother and other members of the family, we do not think the testimony establishes any contract or even an understanding that he should be reimbursed for these advances, nor any such a condition as would justify the court in holding that he was equitably entitled to be subrogated to the rights of the Trust Company, as claimed by him. The fact that he had thus been generous to his mother and other members of the family undoubtedly brought its reward in the satisfaction which such conduct brings, but it does not establish a right to the lien claimed by him.

Appellants also contend that the court erred in holding that they were not entitled in this proceeding to enforce their alleged claims against Gustave Stahl and Emma M., his wife, and others found by the decree entitled to share the proceeds of the property. Among these claims thus sought to be enforced, was one by Dr. Frank A. Stahl against his sister, Mrs. Righeimer, for medical services; another was his claim against Gustave and his present wife, Emma M. Stahl, upon their promissory note; another was his claim against Robert G. Stahl for medical services rendered to his deceased wife, and claiming that Hugo Munzer, as assignee in bankruptcy of Robert G. Stahl, should receive his interest in the property subject to this claim; John Stahl also had certain claims against Gustave and Emma, his wife, also against Robert G. Stahl for money advanced. We are unable to sustain these contentions. We know of no theory of law which would

warrant the trial court in requiring a settlement of the individual claims of these parties, one against another, or claims of any of the children against their mother, which did not arise as rent, or were in some other manner connected with the real estate in question.

Appellants contend that the court erred in allowing solicitor's fees to be paid to Morse Ives out of the proceeds of the sale of the trust estate. There is no question made as to the correctness of the amount; indeed, that is agreed upon, the contest being only as to whether or not any compensation is permissible out of the proceeds of the sale for Ives' services in establishing and preserving the trust estate.

Appellees have maintained throughout that this was a trust estate. The premises were claimed by Frank A. Stahl and John Stahl, and their assertion of title to it made the services of attorneys necessary to secure an adjudication that it was in fact a trust estate; such adjudication having been made, there should be an allowance of reasonable solicitor's fees to be paid out of the fund, and before it is divided among those entitled to it. Abend v. Endowment Fund Commission, 174 Ill. 96; Chick v. Northwestern Shoe Co., 118 Fed. 933; White v. University Land Co., 49 Mo. App. 450; Trustees v. Greenough, 105 U. S. 527.

Appellants object to the amount of the fees allowed the master, and also object to the distribution of such fees. The total fee allowed was $450, and of this amount $360 was taxed against Frank A. Stahl. By the act of 1907 it was provided that in Cook county masters might receive as a "fee for examining questions in issue referred to them, and reporting conclusions thereon, * * * such compensation as the court may deem just." In view of the testimony of the master as to the character and extent of the services thus rendered by him, and of what the record discloses as to the mass and complexity of the litigation, we cannot say that the court erred in allowing the amount; and in view of the

conflicting positions taken by cross-complainant Frank A. Stahl, and the contradictory evidence offered by him in various phases of the litigation, and the necessarily large record which was thereby caused, we can tradictions, as are disclosed by this record, it may be the amount to be charged against him.

While in a case involving such complications and contradictions, as are dislosed by this record, it may be difficult for the parties to believe that they have been justly dealt with, we are of the opinion that in the record before us there is no substantial error, and the decree will, therefore, be affirmed.

*Decree affirmed.*