The First National Bank of Chicago, Complainant, v. LaSalle-Wacker Building Corporation et al., Defendants. Halsey, Stuart and Company et al., Appellants. J. L. Monaghan et al., Appellees.

Gen. No. 37,935.

Heard in the first division of this court for the first district at the December term, 1934. Opinion filed May 6, 1935. Rehearing denied May 20, 1935.

CLIFFORD R. EDMISTER, of Chicago, for appellants; EDWARD L. HOYER, of Chicago, of counsel.

RINGER & REINWALD, of Chicago, and BRUNO V. BITKER, of Milwaukee, for appellees; IRVING PUCHNER, of Milwaukee, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal defendants, Halsey, Stuart & Co., reorganization manager, LaSalle-Wacker Corporation, and Phelps Kelley, seek to reverse an order entered awarding $15,000 in payment for services rendered by solicitors for certain bondholders, and $1,578.07 in payment of disbursements made by the chairman of such bondholders' committee.

The record discloses that The First National Bank of Chicago as trustee filed a foreclosure suit on behalf of the holders of $6,500,000 Series A Bonds executed by the LaSalle-Wacker Building Corporation, to finance the cost of constructing a large building. $8,000,000 worth of bonds were issued consisting of $6,500,000 Series A bonds and $1,500,000 Series B bonds. The foreclosure suit contemplated a plan for a reorganization of the property, and defendant Halsey, Stuart & Co., the underwriter of the bond issue, and defendant Phelps Kelley, who was associated with that house, and others, prepared a plan for such reorganization. Certain of the holders of Series A bonds were not satisfied with the plan on the claimed ground that the interest of such bondholders was not properly protected, and sought to intervene in the foreclosure suit. The chancellor refused to permit them to intervene until the property had been sold by the master in chancery, when they could object to the confirmation of the report. The property was sold by the master on March 23, 1934, and on May 19, 1934, an order was entered permitting J. L. Monaghan, Dr. C. G. Johnson and Kenneth C. Lindsay to intervene for the protection of certain bondholders of Series A bonds. Before they were permitted to intervene they brought a suit in the United States District Court and another suit in the circuit court of Cook county, seeking to enjoin the parties in the instant case from carrying out their

proposed reorganization plan. These two suits were dismissed and afterward, as stated, leave was given to these parties to intervene in the foreclosure suit.

As a result of the intervention of Monaghan and others on behalf of certain owners of Series A bonds, the plan proposed by the parties in the foreclosure suit was materially changed and modified. The original plan provided for the approval of it by persons who had deposited their bonds with a bondholders' committee without submitting the plan to the court for approval or for the right of bondholders to participate in it after the hearing. The plan was modified and changed by the decree as finally entered.

The plan as modified, counsel for intervenors say, "gave the bondholders the opportunity to control the property rather than to have Halsey, Stuart & Co. control it," as the plan originally provided. A number of other changes in the proposed plan were brought about through the intervention of Monaghan and others which, as found by the court, resulted in benefit to all the bondholders and stockholders in the reorganized property.

In passing on the question of allowing fees to the solicitors involved in the matter before us, the court said: "Well, they [the intervenors] have accomplished the modification of the plan of reorganization whether you deny it or not. . . . And I think the record ought to show that it is the opinion and the deliberate judgment of the court that the objecting bondholders in this proceeding have been of greater assistance to the Court in the manner in which they have presented their objections toward the modification of the plan and the adoption of the plan, which I think is infinitely more beneficial to the bondholders, than in any proceeding that has come to my attention; they have approached it in a lawyer-like and sensible way; they filed their objections specifically; have presented

them; they presented their reasons for them; there has been a great deal of time spent in doing that, and it has been done, I think, in a way that resulted in a better plan, and it has been of great help to the Court." And later the court further said: "Now, it seems to me it would be ridiculous to invite bondholders to come in and object where they have a valid objection and where their objections, many of them, are ultimately sustained, and then say for those services they should not be paid anything, but that the attorneys and the parties who otherwise were interested should be paid for everything they do. I assume that the Halsey Stuart committee and the building corporation, and everybody else here who has retained counsel, have been paid. . . . It seems to me it would be rather a perversion of justice to say that the objectors, simply because they are in the minority, should not be paid, and I have not yet heard any objections or any valid reason stating why they should not. . . . and where their objections have substance to them, and I say that in this case, I think, more than in any matter that has come to my attention, the objections were made in good faith and were valid objections, and were well presented.

"Now if you say that they should not be compensated for that, then I say that nobody else in the proceeding ought to be compensated for anything they did, because they have not any different interest,—the difference is only in the matter of degree."

It further appears from the record that The First National Bank, as trustee, was represented by counsel and for a part of the same period of time the same counsel represented the Halsey, Stuart & Company committee which had done the work in the preparation of the original proposed plan of reorganization. For the services they rendered the complainant trustee $25,000 was awarded, and for services rendered to the Halsey-Stuart committee $9,800. The attorneys for

the building corporation were paid $20,000 by the reorganization manager, but without court approval, $5,000 of which was claimed for services rendered in the collection of rent. As stated by the chancellor, counsel for all the parties appear to have been paid substantial sums for the services they performed.

The solicitors whose fees are involved in the instant case prepared an itemized statement of the services they rendered, which tends to show, as stated by one of the solicitors, that they had necessarily expended 1,500 hours. On the hearing before the chancellor the attorneys claimed $25,000 for such services. The court refused this amount and stated he would allow $10 an hour for 1,500 hours, or a total of $15,000. The $1,578.07 was for disbursements made by the intervenors which were shown by the itemized statement.

On the hearing of the matter before the chancellor one of the solicitors for the complainant, The First National Bank of Chicago, as trustee, who filed the bill, stated, "Well, my feeling, your Honor, is that the only interest that the trustee [the complainant] has is to see that it is not an unreasonable amount. . . . My own feeling is that these gentlemen [solicitors for intervenors] are entitled to compensation."

On the hearing counsel for defendants who appeal objected to the allowance of the solicitors' fees on the ground that the bondholders did not understand that the solicitors expected to be paid because some of the statements made in writing (in the nature of letters by the intervenors to bondholders) stated that the bondholders would not be obligated in any way; also that Mr. Monaghan would bear all the expenses incurred.

In this court, however, counsel take the position that the court was without authority to enter the order for the payment of solicitors' fees and for disbursements because there was no provision in the trust deed for such allowance, and in support of this cite *Henke*

*v. Gunzenhauser,* 195 Ill. 130; *Patterson v. Northern Trust Co.,* 286 Ill. 564; *Farwell v. Illinois Merchants Trust Co.,* 264 Ill. App. 49. In answer to this contention we might say that no such contention was made on the hearing before the chancellor and the point, therefore, is not properly before us. But we prefer to answer the contention as now made. We think none of the cases cited sustains the contention made.

In the *Henke* case (195 Ill. 130) a decree was rendered in a foreclosure suit, in which complainant was allowed a solicitor's fee of $625 for services rendered. The Appellate Court reduced this to $100. The trust deed provided for the payment of $100 solicitor's fees in case of foreclosure and it was held that this was all that could be allowed and the judgment of the Appellate Court was affirmed. The court there said (p. 135): ''We have uniformly held that in the absence of a statute authorizing the allowance of attorney's or solicitor's fees to the plaintiff's counsel, and in the absence of a contract between the parties to that effect, none whatever can be assessed against the defendant,—in other words, that the allowance of an attorney's fee in this State rests solely upon a contract between parties. If no attorney's or solicitor's fee is agreed to be paid, none can be allowed, and if there is an agreement to pay a certain amount that amount limits the allowance and it cannot be increased, though if unreasonable it may be diminished.''

In the *Patterson* case (286 Ill. 564), a bill was filed asking the court to set aside a former decree and to require the trustee to account. The trustee filed a motion to strike the bill and to dismiss the suit on the ground that it was frivolous and vexatious and in violation of an injunction and a clear and palpable abuse of the process of the court. The trustee also moved the court to ascertain and fix the amount of solicitor's fees incurred in defense of the suit and tax them as a

part of the costs against the complainant Patterson. The court struck the bill but denied the motion to fix and allow solicitor's fees and to tax them as costs against Patterson. Patterson appealed and the trustee assigned cross errors for failure of the court to tax solicitor's fees as costs against Patterson. The decree was affirmed by the Appellate and the Supreme Courts. It was held that while solicitor's fees might be allowed the trustee out of the trust estate and against Patterson's share of the trust estate, they could not be taxed against Patterson as costs because there was no statute authorizing this to be done. But the court there said (p. 567): "It is a rule universally recognized that a trustee not at fault is entitled to be reimbursed for all his expenses properly incurred in the administration of his trust and has an equitable lien on the trust estate for the same. (Perry on Trusts, 984; Lewin on Trusts,—12th ed.—1267; 39 Cyc. 339; 28 Am. & Eng. Ency. of Law, 1030; *King v. Cushman,* 41 Ill. 31; *Stewart v. Fellows,* 128 id. 480; *Waterman v. Alden,* 144 id. 90; 15 Corpus Juris, 105.) Where a beneficiary brings a suit against his trustee which is groundless, the solicitor's fees and expenses of the trustee in defending the charge are to be paid out of the share of the complainant in the trust estate and not charged against the estate generally nor a general fund by which co-beneficiaries would have to contribute. The suit by Patterson was frivolous, oppressive and a wrongful attempt to relitigate matters already decided, and the rule that his share of the trust estate should pay the expenses applies with all its force.

"The right and duty of the court to allow to the trustee out of Patterson's share of the trust estate all legitimate expenses in defending against his charges, including solicitor's fees, cannot be doubted.
. . .

"At common law costs were never recoverable, and they can be recovered only in cases where there is statutory authority therefor. . . . The decision in the case of *Waterman v. Alden, supra* [144 Ill. 90] is in perfect harmony with the rule and all former decisions and seems to have been strangely misunderstood. In that case the expenses of the trustees in the litigation up to the master's report were $3,869.71 and the attorney's fees incurred afterward were $1,348.27. The trustees had been negligent in failing to keep proper accounts, and the court required them to personally pay $988.62 for that reason and authorized them to charge to the principal fund the balance of the expenses. The amount allowed the trustees was charged against the trust estate and was not taxed as costs against anyone. The settled rule was followed that the court might charge proper expenses and solicitor's fees against a trust estate being administered by the court."

From what we have said and quoted from the *Patterson* case we think it clear that the holding in that case is ample authority for the allowance of solicitors' fees in the case before us.

In the instant case the court found that the services rendered by the solicitors for the intervenors resulted in the approval of a modified plan of reorganization, the result of which benefited all the parties interested in the property. By the order appealed from the solicitors' fees are not taxed as costs against anyone but are payable out of the rents derived from the property.

In the *Farwell* case, 264 Ill. App. 49, it was held that a beneficiary of a trust was not entitled to solicitor's fees as costs in resisting a proposed modification of a trust, the primary object of which was to cut off the interest of such beneficiary contrary to the wishes of the other beneficiaries. The court there recognized the exception to the general rule that solicitor's fees are not allowable in the absence of contract or statute

except in suits brought by trustees for the construction of wills and except where solicitor's fees were allowed to one of many parties having a common interest in the trust fund, following the rule announced by the Supreme Court of the United States in *Trustees of Internal Improvement Fund v. Greenough*, 105 U. S. 527.

We think the rule is firmly established that a court of equity or a court in the exercise of equitable jurisdiction will, in its discretion, order an allowance of solicitor's fees to a party who, at his own expense, has maintained a successful suit for the preservation, protection or increase of the common fund or of common property, or who has created at his own expense or brought into court, a fund in which others may share with him. *Trustees of Internal Improvement Fund v. Greenough*, 105 U. S. 527; *Central Railroad & Banking Co. of Georgia v. Pettus*, 113 U. S. 116; *Hobbs v. McLean*, 117 U. S. 567; *Harrison v. Perea*, 168 U. S. 311; *Kadish v. Chicago Co-Operative Brewing Ass'n*, 35 Ill. App. 411; *Stahl v. Stahl*, 166 Ill. App. 236; *Abend v. Endowment Fund Commission*, 174 Ill. 96; *Hempstead v. Meadville Theological School*, 286 Pa. 493 (49 A. L. R. 1145).

In the *Greenough* case, 105 U. S. 527, it was held that one jointly interested with others in a common fund, who in good faith maintains necessary litigation to save it from waste is entitled, in equity, to the reimbursement of his costs out of the fund, including his solicitor's fees. In that case, a suit was brought by a large bondholder on behalf of himself and other bondholders against the trustees and others. The court there said, (pp. 532, 533): "It is a general principle that a trust estate must bear the expenses of its administration. It is also established by sufficient authority, that where one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reim-

bursement, either out of the fund itself, or by proportional contribution from those who accept the benefit of his efforts. . . .

"Of course, it is well understood that costs as between solicitor and client include all reasonable expenses and counsel fees, and are not like costs as between party and party, confined to the taxed costs allowed by the fee bill."

In the *Harrison* case, 168 U. S. 311, the court said (p. 325): "The defendant also objects to the allowance of the solicitor's fee which is charged against the fund. We think no error arises from this action of the court below. By the exertions of the solicitor the fund was recovered, and it was properly made to bear some portion of the expense of its administration. The amount was within the judicial discretion of the court, and in fixing that amount the trial court could proceed upon its own knowledge of the value of the solicitor's services. *Trustees v. Greenough,* 105 U. S. 527; *Fowler v. Equitable Trust Co.,* 141 U. S. 411."

In the *Kadish* case, 35 Ill. App. 411, solicitors for complainant in a suit filed by one on behalf of himself and other creditors and stockholders of an insolvent corporation for the appointment of a receiver and the winding up of a corporation, were allowed their fees out of the fund. The opinion in that case was written by Judge Moran, who in discussing the question before us said (p. 416): "It is, no doubt, as counsel contends, well settled as a general doctrine in courts of equity, that where one person institutes legal proceedings for himself and others, and thereby secures a fund for the common benefit of all, an allowance will be made to him for costs and expenses necessarily incurred. 2 Daniell's Ch. Pr. 1411; *Whitsett v. City B. & Assoc.,* 3 Tenn. Ch. 526."

In the *Abend* case, 174 Ill. 96, it was held that a trust fund may be made to bear the expense of a solici-

tor's fee for services rendered to preserve the fund for its proper use.

Under the authorities above referred to, and many others, we hold the allowance of solicitors' fees in the instant case was authorized. And for the same reason, we are of opinion that the court was warranted in allowing $1,578.07 to reimburse Monaghan, the intervenor.

The defendants further contend that the court was in error in allowing the solicitors' fees in the absence of evidence as to the reasonableness of the amount, and say that since there was no evidence as to the reasonableness of the amount the order of allowance is erroneous. It is true that no witness testified on the hearing as to the reasonable value of the services rendered nor as to the time expended by counsel; but the solicitors presented an itemized statement of the services they had prepared showing what they did in detail and the length of time involved, from which it appears the court was advised that counsel in performing the work took 1,500 hours for which they thought a reasonable fee would be $25,000. The court, however, allowed but $10 an hour, or $15,000. The court stated he was familiar with the services performed by counsel on account of the numerous appearances in court and that he could fix the value of them without hearing attorneys testify on the question. We agree with this conclusion. *Harrison v. Perea,* 168 U. S. 311; *Alford v. Bennett,* 279 Ill. 375; *Baker v. Baker,* 202 Ill. 595; *Kadison v. Fortune Bros. Brewing Co.,* 163 Ill. App. 276.

In the *Alford* case, the court said (p. 389): "In *Baker v. Baker,* 202 Ill. 595, where an allowance to the guardian *ad litem* was sustained, the court said (p. 621): 'We find no evidence in the record on that subject. . . . It is the duty of the court to see that he [the guardian *ad litem*] makes all proper defenses. He must act under the directions of the court. It must

therefore be presumed that the chancellor had knowledge of the services rendered by [the guardian *ad litem*] and the reasonable value of such services. He could, in the exercise of his legal discretion, make the allowance, and in the absence of evidence tending to show an abuse of that discretion we cannot say the allowance was unreasonable.' The reasoning in that case must be held conclusive on this point on this record.''

A further point is made that the court erred in considering the services performed by counsel in connection with the suit filed in the United States District Court and in the suit filed in the circuit court of Cook county because such services were not rendered in connection with the modification of the original plan of reorganization. On the hearing no such point was made and obviously it cannot be urged in a court of review for the first time. But in any event, we are of opinion that the chancellor found that all of the services rendered by counsel tended to bring about the modification of the reorganization plan. We hold such services could properly be considered in fixing the solicitors' fees.

The order of the circuit court of Cook county appealed from is affirmed.

*Order affirmed.*

MATCHETT, J., concurs.

McSURELY, J., specially concurring: As the point of lack of authority to allow solicitors' fees in question was not raised in the trial court, I concur in the foregoing conclusion.

Reorganization plans connected with foreclosure proceedings are of rather recent development. None of the cases cited involves solicitors' fees in such a plan. I fail to find any authority for an allowance out of the funds of the estate, in the face of objection, of fees to solicitors for services in contributing suggestions, even of value, to a reorganization plan.