CITY OF ST. LOUIS, Trustee Under Will of BRYAN MULLANPHY, v. FRANK W. McALLISTER, Attorney-General; CHAMBERS SMITH et al., Interveners, Appellants.

In Banc, January 4, 1924.

1. **TRUSTS**: Administration: Judicial Construction of Instrument: Costs. A trust fund of right should bear the expense of its own administration. Where doubts arise as to the true construction of the instrument creating the trust and there are different claimants, the trustee may bring his bill, calling upon the claimants to settle their rights before the court and praying for an order directing the mode of executing the trust, and the expenses of the suit, as

St. Louis, Trustee for Mullanphy, v. McAllister.

respects all the necessary parties, including fees of attorneys, are properly charged against the trust fund; but ordinarily the persons, other than the trustee, entitled to .costs in such litigation, are limited to those whom it is necessary for the trustee to bring before the court as parties in order to obtain a valid decree to protect himself in the discharge of his duties in disposing of the fund.

2. ———: Cy Pres Doctrine: Failure: Resulting Right of Heirs. If .the objects of a trust have failed, a court of equity cannot, on the sole ground of such failure, select other charitable uses to which the fund shall be applied. It must be found that such other uses will give effect to the general intention of the donor as expressed in the instrument creating the trust; and if no general intention is disclosed, the doctrine of *cy pres* has no application, and then, upon a failure of the particular uses upon which the gift was made, a trust results in favor of the donor's heirs.

3. ———: Administration: Judicial Construction of Instrument: Failure of Particular Uses: Cy Pres: Heirs as Interveners: Necessary Parties: Costs. In 1859 Bryan Mullanphy by will gave to the city of St. Louis one-third of his estate "in trust to be and constitute a fund to furnish relief to all poor emigrants and travelers . coming to St. Louis, on their way bona-fide to settle in the West." The validity of the devise as a gift to charity was judicially determined in 1860, in Chambers v. St. Louis, 29 Mo. 543. In 1916 the trustee brought suit against the Attorney-General, alleging that, owing to changes in conditions in the development of the country and the movement of population, the application of the fund to the particular uses specified by the donor had become .impracticable, and asking for authorization to apply the fund to other charitable uses; the answer of the Attorney-General put in issue the allegations that it had become impracticable and impossible to apply the trust fund to the specific uses directed by the donor; collateral heirs of the donor, by leave of court, intervened, and adopted the trustee's allegations as to the failure of the trust, and averred that the *cy pres* doctrine did not apply, but that to the extent to which the trust had failed the funds should be decreed to them as a resulting trust. In the circuit court there was a decree in favor of the trustee, and the defendant and interveners appealed, and and on appeal the decree was reversed and it was held that the trust had not failed, and by that holding the question of a further disposition of the fund dropped out of the case. *Held*, that the intervention of the collateral heirs made it possible for the court to determine and put at rest all questions relating to further uses of the fund, which was an indispensible requisite to

its proper administration in the event it had been found that the objects for which the charity was originally created had failed, and said interveners, being necessary parties on that issue, are entitled to have a reasonable allowance for counsel fees payable out of the trust fund, and the trial court in refusing their request therefor did not exercise a sound discretion.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

REVERSED AND REMANDED (*with directions*).

*Jourdan, Rassieur & Pierce* and *Lee W. Hagerman* for appellants.

The interveners are entitled to have their allowance of costs and attorneys' fees herein claimed as a matter of law. The action of the trial Court and the Supreme Court show that the interveners were properly made parties to the record. The trial court's action in permitting the intervention and the patience with which it considered voluminous briefs, and the action of the Supreme Court which extended the interveners' time for argument in order that the case might be adequately presented, showed, of a certainty, that the propriety of the intervention is, as far as this record is concerned, a thing determined. St. Louis v. McAllister, 281 Mo. 50; Brandon v. Carter, 119 Mo. 580; Supreme Council v. Nidelet, 85 Mo. App. 255; Wallen v. Wallen, 19 Mo. 668, 17 Mo. 376. As regards heirs as a general principle equity gives them their costs whatever may be the result. Daniels Chancery Practice, pp. 1382, 1383; Crow v. Crow, 11 Beav. 397; Moggrudge v. Thackwell, 5 Ves. Jr. 87, 13 Ves. Jr. 415; Archbishop of Herrford v. Adams, 7 Vesey, 324; Mills v. Farmer, 19 Vesey, 490, 1 Merivale, 103; Curree v. Page, 17 Ves. Jr. 462, 467; Beames on Costs, 25, 98; Gaffney v. Hevey, 1 Drury & Walsh, 12, 25. The American doctrine and practice in regard to allowing attorneys' fees and expenses (costs between solicitor and client) in cases like this is in accord with the English

authorities cited supra.. The matter in regard to charity cases is summed up briefly in Perry on Trusts (6 Ed.) sec. 747; and as regards construction of wills generally in 1 Redfield on Wills, ch. 9, sec. 10, p. 495. See Hoe v. Executors, 31 N. J. Eq. 234. The litigation in such a case is indispensable to the proper administration of the fund, and it should, therefore, bear the costs of litigation as part of the expenses incident to its administration. Jacobus' Executors v. Jacobus, 20 N. J. Eq. 49; Security Co. v. Pratt, 65 Conn. 183; Ingraham v. Ingraham, 169 Ill. 432, 471; Attorney-General v. Morris, 19 N. J. Eq. 503; Missionary Society v. Mead, 113 Ill. 375; Dean v. Home for Aged, 111 Mass. 132; Brinn v. Wright, 194 Mass. 540; Straw v. Trustees, 67 Me. 493; Dean v. Dean, 54 Wis. 23, 37; Scott v. West, 63 Wis. 588; Webster v. Morris, 66 Wis. 400; Scott v. Reeves, 77 Wis. 305.

*George F. Haid* and *Oliver Senti* for respondent.

(1) The general rule in this State is that one litigant cannot be compelled to pay the attorney fees of another, either in law or in equity. Pickel v. Pickel, 243 Mo. 641; Johnson v. United Railways Co., 247 Mo. 326, 350; In re Estate of Soulard, 141 Mo. 642. (2) Counsel fees should not be allowed out of a fund to a litigant whose interest therein is purely contingent. Drake v. Crane, 66 Mo. App. 495. (3) Costs between solicitor and client are allowable only in favor of the trustees who by virtue of their office represent the fund, and persons who intervene for their own interest, whether successful or not, are chargeable with the expenses of the litigation, outside of strictly taxable costs. Drake v. Crane, 66 Mo. App. 495. (4) The practice of inviting litigation by allowing parties to indulge in judicial controversies involving trust funds at the expense thereof, in pernicious and should not be encouraged by the courts. Will of McNaughton, 138 Wis. 179, 193. (5) Where an appeal is taken from a judgment of the circuit court involving allowance of costs, the question to be determined

is not what the appellate court would have done if the case had been before it in an original proceeding, but whether the circuit court abused its discretion. Walton v. Walton, 19 Mo. 668. (6) Where the validity of the will creating a charitable trust has been upheld, a complainant seeking to establish the failure of the trust and claim the fund as testator's heir is not entitled to an allowance out of the fund for counsel fees. Tincher v. Arnold, 147 Fed. 665, 677. (7) Where a charitable trust is created, the heirs of the donor have no reversionary interest in the fund. Mott v. Morris, 249 Mo. 147. . (8) The charitable trust created by the will of Bryan Mullanphy has been upheld in this court. Chambers v. St. Louis, 29 Mo. 543.

RAGLAND, J.—This is an appeal from an order of the Circuit Court of the City of St. Louis refusing to allow costs as between attorney and client and direct their payment out of the trust fund involved in certain antecedent litigation. The facts with respect to such litigation may be briefly stated as follows:

In 1916 the city of St. Louis, as trustee under the will of Bryan Mullanphy, deceased, instituted a suit against the Attorney-General of Missouri, as the representative of the general public in matters appertaining to the administration of public charities, for the purpose of having the trust fund provided by said will applied *cy pres*. In its petition it alleged among other things that Mullanphy by his will, probated in 1859, had given and devised to it one-third of his estate "in trust to be and constitute a fund to furnish relief to all poor emigrants and travelers coming to St. Louis, on their way bona-fide to settle in the West;" that it had accepted the trust and since that time had been administering the fund in accordance with the directions of the testator; that at the time the will was made it could be readily ascertained who were the persons that belonged to the class designated therein as "poor emigrants and travelers coming to St. Louis, on their way, bona-fide, to

settle in the West," but that owing to the change of conditions in the development of the country and the movements of population, it had become practically impossible to determine whether any given individual fell within such classification, and for that reason the application of the trust fund according to the scheme of the testator and his particular directions had become impracticable. It further alleged that the greater part of the trust fund consisted of real estate which constantly required heavy expenditures, in the way of repairs, which absorbed an undue proportion of the income for the mere maintenance of the fund. So in addition to authority to apply the fund to charitable uses other than that specifically directed by the donor it sought an authorization to sell the real estate and invest the proceeds in such securities as would insure a substantial income and at the same time preserve intact the *corpus* of the fund.

The answer of the Attorney-General put in issue the allegations of the petition with respect to the impossibility or impracticability of applying the trust fund according to the specific directions of the testator. It also challenged the necessity or advisability of selling the real estate and re-investing the proceeds.

After the issues were made up as between the plaintiff and the defendant, certain collateral heirs of the testator, by leave of court, filed a petition as interveners. This petition adopted the plaintiffs allegations as to the failure of the trust, but averred that the will did not permit of the construction sought by the trustee; that according to the terms of the will the fund could not be applied *cy pres,* but that to the extent to which the trust had failed the funds should be decreed to the heirs of Mullanphy as a resulting trust.

On a trial in the circuit court there was a decree in favor of plaintiff. The defendant and the interveners both appealed to this court. We held that there had not been a sufficient showing to warrant the finding that the trust had failed, and reversed the judgment. The question as to the construction of the will, with respect

to the disposition of the fund upon a failure of the trust, thereupon dropped out of the case and we declined to consider it. [St. Louis v. McAllister, 281 Mo. 26.]

After the mandate of this court had been received by the circuit court and had been made a part of the record in said cause, interveners filed a motion asking that certain expenses incurred by them in connection with the litigation, together with a reasonable and equitable counsel fee, be taxed as costs and paid out of the trust fund. The motion was overruled, and the action of the circuit court in that respect is the subject of this review.

It is a doctrine of equity that a trust fund of right should bear the expenses of its own administration. In conformtiy with this doctrine it has been generally held, that in cases where doubt arises as to the true construction of an instrument by which a trust is created, and there are different claimants, the trustee may bring his bill, setting forth the facts, and calling upon the claimants to settle their rights before the court, and praying the order of the court in regard to the mode of executing the trust, and the expenses of the litigation, as respects all the parties, and as between attorney and client, are properly charged upon the fund. [1 Redfield on Wills, (4 Ed.) 493-495.] In such cases the litigation is regarded as indispensable to the proper administration of the fund, it being necessary that all persons having an interest therein, or making claim thereto, should be made parties and be afforded an opportunity of being fully heard, to the end that their several rights and claims be judicially determined and set at rest. However, the persons, other than the trustee, entitled to costs in such cases ordinarily are limited to those whom it is necessary for the trustee to bring before the court as parties, in order to obtain a valid decree to protect himself in the discharge of his duties in disposing of the trust fund. [2 Perry on Trusts (6 Ed.) sec. 899.]

The rule that the necessary parties to a proceeding brought by a trustee to obtain the direction of the court,

in regard to the construction of the instrument creating the trust, or as to the mode of carrying its provisions into effect, are entitled to their costs, both as between party and party and as between attorney and client, has universally received liberal application in favor of the heir of the settler where charitable trusts are in question. This, principally on the ground that it is enough that the heir be deprived of his inheritance without being required to contribute of his own means to establish a charity imperfectly declared by his ancestor. [Attorney-General v. Haberdashers' Co., 4 Brown Chancery Cases, (1 Am. Ed.) p. 130; James v. James, 11 Beav. 397; Moggridge v. Thackwell, 1 Ves, Jr. 464, 475; Gaffney v. Hevey, 1 Drury & Walsh, 12, 25; Carter v. Green, 3 Kay & Johnson, 591; Currie v. Pye, 17 Ves. 462; Missionary Society v. Mead, 131 Ill. 338; Ingraham v. Ingraham, 169 Ill. 432, 471; Bliss v. Am. Bible Soc., 84 Mass. 334; Attorney-General v. Moore's Exrs., 19 N. J. Eq. 509; 2 Daniels Chancery Pl. & Pr. (6 Am. Ed.) p. 1364.]

With respect to the allowance of costs in charity cases generally, the rule is summed up by Mr. Perry as follows: "Where a suit arises between the heir and the trustees whether there is a proper bequest to a charitable use, and whether the charity can be established; or where a suit arises between the trustees and the *cestuis que trust,* if there are any that can come into court, or the attorney-general and the trustees as to the establishing and administering of the charity, costs will be allowed to all parties, together with reasonable counsel fees or costs as between solicitor and client, out of the charity fund or estate. But the allowance of costs will depend upon the question, whether the issues raised were fit and proper to be raised and determined by the court. If the issues are immaterial or trifling, or if the conduct of a party is vexatious and litigious, or if he raises improper points, or in any way creates unnecessary delay or expense, the court will not only refuse him costs, but will order him to pay costs." [2 Perry on Trusts (6 Ed.) sec. 747.]

In view of the doctrine and practice deducible from the texts and authorities just cited, which are in no wise affected by our cost statute (Turner v. Johnson, 95 Mo. 431, 452), should the chancellor below, in the exercise of a sound judicial discretion, have allowed and ordered paid out of the trust fund a reasonable counsel fee on behalf of appellants? This calls for a brief consideration of the issues involved, the relation of the several parties to the subject-matter of the action and their conduct and attitude with respect to the litigation.

The validity of the devise under the Mullanphy will as a gift to charity was in no way in question. That had been judicially determined many years before. [Chambers v. St. Louis, 29 Mo. 543.] The trustee, the city of St. Louis, alleged that it was the manifest intention of Mullanphy, the testator, to dedicate the devised property to public charity forever, for uses which were then and might thereafter be beneficial to the city and the inhabitants thereof, and promotive of the public good; that owing to changed conditions the application of the trust fund according to the scheme of the testator and his particular directions had become impracticable; and that therefore, under the law relating to charitable uses, it should be authorized by the court to apply the trust fund to some object of a kindred character so as to fulfill in substance, if not in manner and form, the purposes of the consecration. The Attorney General, who was the sole defendant, did not take issue with the trustee as to the construction the latter put upon the will, but he denied that conditions had so changed that the application of the fund according to the specific directions of the testator had become impracticable.

At this stage of the proceeding appellants, who are Mullanphy's heirs, intervened. They agreed with the trustee that the application of the trust fund in accordance with the directions of the testator had become impracticable; but they averred that the will did not disclose any intention on the part of the testator to devote

the property devised to general charities, or to any other form of charity than that specifically declared in the will, and consequently that a trust resulted in their favor.

The issues as thus framed called for a construction of the will. If the objects of a charitable trust have failed, a court of equity cannot, on the sole ground of such failure, select other charitable uses to which the fund shall be applied. It must be found that such other uses will give effect to the general intention of the donor as expressed in the instrument creating the trust; and if no general intention is disclosed the doctrine of. *cy pres* is without application. [Adams on Equity (5 Am. Ed.) sec. *71; 2 Story's Equity (11 Ed.) p. 461, sec. 1182.]

Whether the will evidenced a general intention on Mullanphy's part to devote one-third of his estate to charities, or whether he had but the one particular object in mind, namely, the relief of ''poor emigrants and travelers coming to St. Louis, on their way bona-fide to settle in the West,'' is by no means free from doubt. If such general intention did not exist, then upon a failure of the particular uses upon which the gift was made a trust resulted in favor of his heirs. [Easterbrooks v. Tillinghast, 5 Gray, 17; Hopkins v. Grimshaw, 165 U. S. 342.] The determination of the question was therefore essential to a further administration of the trust fund, if, as the trustee alleged, the specific uses originally declared had failed. Such a determination could of course be had only in a proceeding to which the heirs were parties—merely ignoring them did not dispose of their rights.

Appellants did not begin or invite the litigation. After they became parties by intervention they did nothing, so far as the record discloses, to hinder, delay or obstruct the speedy and orderly disposition of the cause. On the contrary, they made it possible for the court to determine and set at rest all questions with respect to the further uses of the fund, an indispensable requisite

for its proper administration, in the event it was found that the objects for which the charity was originally created had failed. [Noe's Admr. v. Miller's Exrs., 41 N. J. Eq. 234, 238.]

Under the settled doctrine and practice followed by courts of equity in establishing and administering charitable trusts, to which reference has heretofore been made, appellants are clearly entitled to have a reasonable allowance for counsel fees payable out of the trust fund. We are of the opinion, therefore, that the learned trial court in refusing their request therefor did not exercise a sound judicial discretion.

The judgment is accordingly reversed and the cause remanded to be further proceeded with in conformity with the views herein expressed. All concur, except *Woodson, C. J.,* who dissents.

Headnote 1 and 3: Trusts, 39 Cyc. 646, 648; Headnote 2: Charities, 11 C. J. sec. 77.