Royal Neighbors of America, Plaintiff, v. Chicago Title and Trust Company et al., Defendants.
Royal Neighbors of America and Chicago Title and Trust Company, Appellants, v. Harold R. Schradzki et al., Appellees.

Gen. No. 40,029.

Heard in the third division of this court for the first district at the April term, 1938. Opinion filed October 26, 1938. Rehearing denied November 9, 1938.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, of Chicago, for certain appellant; DAVID LEVINSON, ROGER S. BLOCH, and ABRAHAM FISHMAN, all of Chicago, of counsel.

BENJAMIN S. ADAMOWSKI, of Chicago, for certain other appellant; JAMES V. SALLEMI, of Chicago, of counsel.

HAROLD R. SCHRADZKE, EDWIN W. SIMS, FRANKLIN J. STRANSKY, ARTHUR W. SPRAGUE, EARLE G. KALLEN and JOSEPH ROBINSON, *pro se;* SAMUEL A. LITMAN and DAVID F. MATCHETT, JR., both of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the Royal Neighbors of America, as a beneficiary, and the Chicago Title and Trust Company, as trustee, in twenty-five liquidation trusts, from a decree entered on November 30; 1937, ordering the Chicago Title and Trust Company, as trustee, to pay out of the trust estates to Harold R. Schradzki, Sims & Stransky, Arthur W. Sprague, Earle G. Kallen and Joseph Robinson, attorneys for certain other beneficiaries, $7,500 for their services as attorneys in this case.

The bill of complaint was filed on March 13, 1937, by the Royal Neighbors of America, alleging in substance as follows:

It was one of the beneficiaries under thirty-four certain liquidation trusts and a majority beneficiary in thirty-three of the trusts, and Chicago Title and Trust Company was the trustee in each instance; that the Royal Neighbors of America desired to readjust

its interests and the interests of the other beneficiaries and to that end had formulated and submitted a "plan of readjustment" which, by an exchange of securities, would leave the Royal Neighbors of America as the sole owner of twenty-five of the trust estates and leave the other beneficiaries as the sole owners of the nine remaining trust estates; that the allocation of the trusts was based on independent appraisals of the values of the trust estates made by the Chicago real estate board, Ross & Browne and Paul Steinbrecher, realtors; that as an inducement to the other beneficiaries, Royal Neighbors of America had offered in its proposed plan of readjustment to surrender $44,785.65 more in value of securities than it was to receive; that the plan of readjustment had been submitted to and approved by the trust managers of the various trusts, and copies of the plan, together with audits and schedules, had been mailed to all known beneficiaries for their assent or dissent, and the holders of less than 4½ per cent in amount of the outstanding beneficial units in all the trusts had dissented to the plan; that although the provisions of the trust agreements required the trustee to adopt the plan unless 50 per cent of the beneficiaries dissented in writing, nevertheless the trustee failed and refused to adopt the plan of readjustment or to execute the contract for the exchange therein provided.

The plaintiff made Chicago Title and Trust Company, as the trustee, defendant, also certain beneficiaries of each trust, as representatives of various classes, and prayed for a construction of the trust agreements and for a determination that the plan of readjustment was fair and reasonable and the consummation thereof advantageous and to the best interests of all parties, and for a decree directing the trustee to execute the contracts provided for the plan.

On April 17, 1937, the Chicago Title and Trust Company, as trustee under each of the trusts and as repre-

sentative of all the beneficiaries, filed an answer to the complaint, denying the right of the plaintiff to the relief prayed for. Similar answers were filed by certain beneficiaries of the various trusts, named as defendants. The court on its own motion appointed William Feldman as attorney for all unnamed beneficiaries and he filed a similar answer. Thereafter, Harold R. Schradzki, Sims & Stransky, Arthur W. Sprague, Earle G. Kallen and Joseph Robinson, attorneys of record for certain other beneficiary-defendants, filed motions to strike the complaint for certain defendants and filed answers for others. All the motions to strike raised only one question, namely, whether the Chicago Title and Trust Company, as trustee under the various trusts, had the power to adopt, consent to or consummate the plan of readjustment proposed by the Royal Neighbors of America— which was one of the very questions raised in the answer of the Chicago Title and Trust Company, trustee.

On April 21, 1937, an order was entered consolidating an independent complaint, filed February 8, 1937, by Earle G. Kallen, as attorney for Martin J. Trueman, with the case of Royal Neighbors of America. The Trueman complaint prayed to enjoin the trustee from adopting the plan, although the trustee had already indicated its refusal to adopt it.

On July 16, 1937, an order was entered sustaining the motions to strike and dismissing the complaint for want of equity.

The court found that it has jurisdiction of the parties and subject matter and that petitioners, Harold R. Schradzki, Arthur W. Sprague, Sims & Stransky, Earle G. Kallen, Joseph Robinson and William Feldman, appeared herein as attorneys for certain of the defendants who are the owners of certificates of beneficial interest in various of the trust estates held by the Chicago Title and Trust Company, as trustee, under

the liquidation trusts (setting forth the numbers of the various trusts) ; that said petitioners contributed materially to the preservation of said twenty-five trust estates by prompt, proper and efficient action, preserved and kept from waste and despoilation said trust estates and prevented an illegal diversion of the trust funds and properties; that the prompt and efficient procedure of Messrs. Schradzki, Sprague and Sims & Stransky in presenting motions to strike the complaint, to the end that the court dismissed the complaint, not only contributed materially to the preservation and protection of the assets held by the trustee under said liquidation trusts, and prevented the illegal and unauthorized diversion of the funds and properties of the liquidation trusts, but in addition, the direct method of attacking the complaint by motion to strike rather than by answer saved large sums amounting to thousands of dollars of costs which would have been wasted had the cause been permitted to be referred to a master; that these costs would have included the expenses and charges of expert witnesses to testify to the value of each parcel of real estate held by said twenty-five trusts; that the examination of said appraisers would have consumed a vast amount of time and lengthy hearings before a master; that there would be charges for audits; that there would have been court reporter's charges, charges for publication of notices, master's fees and a series of charges for services from attorneys appearing in said proceedings; that while this court is mindful that not all of the costs and expenses would of necessity have been borne by the trust estates, yet this court is of the opinion and so finds that the motions to strike, aside from the preservation and protection of the trust estates, saved to them at least $25,000 in costs and expenses, and probably considerably more; that from the complaint and certain verified petitions for fees

and from the answers thereto the court finds that the total number of certificates issued under the twenty-five trusts mentioned in the complaint is 83,242, representing an original investment by the certificate holders of $8,324,200; that of this total number of certificates the minority holders own 19,819 shares representing an original investment of approximately $1,981,900; that the remaining shares constituting the majority interest are owned by the plaintiff, Royal Neighbors of America; that taking the allegations of the complaint as true (and the defendants represented by petitioners acknowledged the fact), the value of the minority interests in said 25 trust properties as of April 1, 1936, was $1,130,882.11, that the holders of certificates of beneficial interest in the trusts were similarly situated, and had a common interest in the properties comprising the trust estates which the plan of adjustment contemplated would be dissolved; that the petitioners' services redounded to the benefit of the trustee under such liquidation trusts and all of said holders of certificates of beneficial interest and all of the defendants; that the substantial charges and expenses which would have been incurred by the taking of proofs and a trial of this cause were avoided and the trust estates as well as the interests of the defendants therein were exonerated from such charges as the result of the motions to strike; that the proceedings had and taken by petitioners, Schradzki, Sprague, Sims and Stransky, by virtue of the motions to strike and their arguments were of great benefit to the certificate holders involved in these proceedings, and particularly to the minority interests by keeping from despoilation and waste the trust estates and each of them; that the complaint for an injunction originally filed in the circuit court of Cook county Case No. 37C–1332, by attorney Earle G. Kallen, on behalf of his client, later joined in by Alfred A. Harmet represented

by attorney Joseph Robinson, was of great value and benefit to the holders of beneficial interests in said twenty-five trusts and of particular value to the holders of minority beneficial interests; that the work done and results accomplished by such counsel redounded to the interest of all holders of beneficial interests in each and all of said twenty-five trusts; that this court appointed William Feldman in this proceeding to represent the minority holders of certificates of interest in the twenty-five trusts not expressly named in the class designation as parties defendant, and said William Feldman well and truly performed his duties in the protection of the interests of his clients and was of value in protecting and preserving the estates before the court; that the services of all counsel herein named, even though the means and methods taken by divers counsel in the mechanics of procedure differed, contributed toward the end of the dismissal of the complaint herein, and though the methods of attack were different, defeated the illegal design of Royal Neighbors of America, as prayed in the complaint; that aside from William Feldman, counsel appointed by the court, the court finds that only one fee should be allowed and awarded for all of the acts of divers counsel which contributed to the dismissal of said complaint that if one lawyer or one firm or group of lawyers had, by appropriate action, attained the results which here prevailed, namely, the dismissal of the complaint, without burdening the estate with costs of a master's reference, and the preservation of the estates, a fair, usual and customary fee for such services would be $7,500 to such one lawyer or single group or firm of lawyers, aside from the services of William Feldman; that the sum of $7,500 is a fair, reasonable, usual and customary fee for the services of all the petitioners for fees, with the exception of William Feldman, considering the time devoted to the various services by petitioners, the na-

ture of the problems raised, the character, legal experience and ability of all petitioners and attorneys for the plaintiff, the large and substantial value of the property interest affected by the plan of adjustment, the results accomplished and the accompanying benefit to the holders of certificates of beneficial interest in said twenty-five liquidation trusts; and a fee of $500 is a fair, reasonable, usual and customary fee for the services performed by the said William Feldman; and that the fees herein awarded and allotted be prorated to and against the twenty-five several trusts, in accordance with the appraised value of the properties comprising said trust estates, as computed from the average of the three appraisals alleged in the complaint herein.

And then the order sets out the title of the several trusts, together with the fee allowed Feldman and the other petitioners in each of the several cases, and the court finally reached the conclusion, and it is adjudged and decreed, that Feldman is to receive the sum of $500 as attorney's fees for services rendered by him as the appointee of the court; that Harold R. Schradzki, Arthur W. Sprague, Sims & Stransky, Earle G. Kallen and Joseph Robinson are to receive the sum of $7,500 as and for attorneys' fees for the services rendered by them in this cause for the benefit of the holders of beneficial interest in each of the several twenty-five trust estates mentioned in the complaint herein, and on December 6, 1937, a notice of appeal from this final order was taken.

The plaintiffs in this connection contend that the general rule is firmly established in Illinois that in the absence of a valid statute or contract providing therefor, solicitors' fees cannot be allowed by decree, except in cases involving the construction of wills, and cite the case of *Wilson v. Clayburgh,* 215 Ill. 506, wherein the complainant prayed for the appointment of a suc-

cessor in trust. A decree was entered allowing solicitors' fees of $300 to the complainant's solicitors. The court in passing upon this question said:

"The only question involved upon this appeal is, can a court of chancery, in the exercise of its equitable jurisdiction, allow and tax as cost the solicitor's fee of the solicitor for a beneficiary under a trust created by a will, who brings a suit to have the resignation of the trustee named in the will accepted and a new trustee appointed in his place? That question, we think, must be answered in the negative. It has been repeatedly held in this State that nothing can be allowed and taxed as costs by the clerk or the court but items of cost designated by the statute to be so allowed and taxed. (*Constant v. Matteson,* 22 Ill. 546; *Strawn v. Strawn,* 46 id. 412; *Eimer v. Eimer,* 47 id. 373; *Conwell v. McCowan,* 53 id. 363; *Campbell v. Campbell,* 63 id. 502; *Roby v. Chicago Title and Trust Co.,* 194 id. 228; *Rieker v. City of Danville,* 204 id. 191.) The only exception to this rule in this State is in cases brought by trustees for the construction of wills, where a will is so ambiguous as to make it necessary to go into a court of chancery to obtain a construction thereof, in which class of cases the costs of the litigation must be borne by the estate. *Woman's Union Missionary Society of America v. Mead,* 131 Ill. 338; *Ingraham v. Ingraham,* 169 id. 432; *Arnold v. Alden,* 173 id. 229.

"It is urged with much earnestness that the same reason obtains in this case for the allowance of a solicitor's fee to complainant's solicitor to be taxed as costs and paid out of the estate, that exists in the case of a bill filed for the construction of a will which is ambiguous. Such has not been the holding of the courts, (*In re Holden,* 126 N. Y. 589), and this court could not so hold without legislating upon the subject. The question here presented has been before this court in partition suits, (*Strawn v. Strawn, supra; Eimer v.*

*Eimer, supra; Campbell v. Campbell, supra;*) where the litigation often may be as beneficial to the defendant as to the complainant; but the uniform holding has been, in those cases, that the court cannot allow and tax a solicitor's fee in the absence of a statute authorizing it so to do, and the same conclusion has been reached in foreclosure cases. *Conwell v. McGowan, supra; Roby v. Chicago Title and Trust Co., supra.''*

Our attention is called also to the case of *Aloe v. Lowe,* 230 Ill. App. 538, wherein *certiorari* was denied by the Supreme Court, and wherein *Wilson v. Clayburgh, supra,* is cited with approval. See also *Rasch v. Rasch,* 278 Ill. 261; *Farwell v. Illinois Merchants Trust Co.,* 264 Ill. App. 49.

The defendants reply to this contention is that the numerous cases cited clearly indicate that in cases involving the construction of wills, particularly testamentary trusts, the attorney's fees and expenses of all parties, both plaintiff and defendant, may be allowed as a charge against the estate or fund, and point to the reason for this rule and state that if the will is so ambiguous as to require judicial construction, the testator should bear the expense of such litigation, and that a trust fund should bear the expense of its administration, and a decree construing the trust obtained in a proceeding in which all interested parties have appeared is necessary for its proper administration; and cite in support of their contention the case of *City of St. Louis v. McAllister,* 302 Mo. 152, 257 S. W. 425.

The complainant, Royal Neighbors of America, as beneficiary in thirty-four certain liquidation trusts and a majority beneficiary in thirty-three of the trusts, was desirous of adjusting the interest of the several parties in these trusts, and filed a bill for the purpose of adjusting the several ownerships and by that method bring about an order and decree which would make it the sole owner of the interests that it had and which

were described in the bill of complaint, and, of course, it made all the parties defendant that were necessary for that purpose. Upon a motion made by several of the parties to strike this petition and after the court had considered the motions which were pending before it, the bill of complaint filed by the Royal Neighbors of America was dismissed. No appeal of any kind having been taken, the attorneys who represented the interests of several of the defendants who were beneficiary owners in several of the trusts, filed their petition for the allowance of attorneys' fees in appearing for the beneficiaries who objected to the plan proposed by the complainant.

As we have indicated in this opinion, in order that attorneys' fees may be allowed by the court in pending litigation, it is necessary that there be an agreement for the payment of attorneys' fees, except where the trust is created by will and there is controversy as to the construction of the provisions of the will. However, that is not the question in this case. The sole question as we view the record is whether under the facts as we have outlined them and as they appear in this opinion, the beneficiaries who appear by attorneys are entitled to attorneys' fees for their services in the litigation.

The defendants' theory is, as we understand the record, that it is well settled that attorneys representing one having a common interest with others in a fund, who maintain the necessary litigation to preserve and protect that fund, are entitled in equity to an allowance of attorneys' fees from the fund itself. They cite in support of this theory the case of *Trustees of Internal Improvement Fund v. Greenough,* 105 U. S. 527, in which action the bondholders successfully maintained an action to prevent the trustees under the bond issue, and others, from diverting the security of the bondholders to purposes other than those provided in

the trust agreement securing their bonds, and quote what the court said upon that question as follows:

"It is a general principle that a trust estate must bear the expenses of its administration. It is also established by sufficient authority, that where one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefit of his efforts. . . .

"Of course, it is well understood that costs as between solicitor and client include all reasonable expenses and counsel fees, and are not like costs as between party and party, confined to the taxed costs allowed by the fee-bill."

The defendants call our attention to the opinion of this court in the case of *First Nat. Bank v. LaSalle-Wacker Bldg. Corp.*, 280 Ill. App. 188. In that case there was a foreclosure suit and a plan of reorganization was submitted to the court for approval by a bondholders' committee holding a large amount of the bonds. Certain of the holders intervened on the ground that the interest of the bondholders was not properly protected in the plan of reorganization, and secured a modification thereof, which the court below found to be beneficial to the bondholders and allowed $15,000 to the attorneys representing the intervenors to be paid out of the property being foreclosed. The court said:

"We think the rule is firmly established that a court of equity or a court in the exercise of equitable jurisdiction will, in its discretion, order an allowance of solicitor's fees to a party who, at his own expense, has maintained a successful suit for the preservation, protection or increase of the common fund or of common property, or who has created at his own expense or brought into court, a fund in which others may share

with him. *Trustees of Internal Improvement Fund v. Greenough,* 105 U. S. 527; *Central Railroad & Banking Co. of Georgia v. Pettus,* 113 U. S. 116; *Hobbs v. McLean,* 117 U. S. 567; *Harrison v. Perea,* 168 U. S. 311; *Kadish v. Chicago Co-operative Brewing Ass'n,* 35 Ill. App. 411; *Stahl v. Stahl,* 166 Ill. App. 236; *Abend v. Endowment Fund Commission,* 174 Ill. 96; *Hempstead v. Meadville Theological School,* 286 Pa. 493 (49 A. L. R. 1145)."

In the instant case the finding of the courts in allowing solicitors' fees is based largely upon the question of whether the funds are being wasted by the plaintiff, and therefore in the litigation necessary to preserve the estate, the courts have held that the acting party is entitled to a solicitor's fee. Now, let us examine what occurred in this particular litigation. The plaintiff, as we have indicated, is a beneficiary under thirty-four certain liquidation trusts and a majority beneficiary in thirty-three of the trusts, and so far as the facts would indicate there was no waste of the estate. The purpose of the litigation was to consolidate the interest of the several beneficiaries in the trusts, as outlined in the petition filed by the plaintiff. In other words, the plaintiff wished to be the sole beneficiary of a certain number of trusts and the defendants who were beneficiaries, were to be the sole beneficiaries in the trusts that may have been transferred to them by order of court, and in carrying out this plan, the plaintiff proposed in a settlement of the difference in value of the several trusts to surrender to the other beneficiaries $44,785.65 more in value of securities than it was to receive, and as it appears from the petition of the plaintiff that the plan of readjustment had been submitted and approved by the trust managers of the various trusts, and copies of the plan, together with audits and schedules, had been mailed to all known beneficiaries for their assent or dissent, and the holders of less than 4½ per cent in amount of the outstanding

beneficial units in all the trusts had dissented to the plan. So from the allegations which were admitted by the motion of these defendants to strike, the plaintiff was not attempting to waste or had wasted any of the properties in which these defendant beneficiaries were interested. The fact that the court dismissed the plaintiff's bill on motion of these defendants, does not mean that there was waste or the destruction of property such as would justify the court in fixing the amount of damages. This was but a lawsuit between the parties plaintiff and the defendants, and there was nothing which would indicate that the properties were dissipated or destroyed.

All of these parties still have the same interest in the same trusts as they had before the litigation was instituted. It does not appear from what is before the court that the action of the plaintiff was frivolous or oppressive, or that there was a wrongful attempt to relitigate matters already decided. On the contrary, the action was for the purpose of making the several interests certain as to ownership of the several interests involved. The plaintiff by this action sought to bring about a certain result, which, from the admission of the pleadings, was to make certain the interests of the several parties, and it certainly was not frivolous in the sense that the action was to annoy the defendant beneficiaries by being obliged to relitigate.

As we have previously stated, this was a litigation in which the parties had a right to present their matters to the court, and litigation should not be made expensive by taxing an honest litigant in his effort to preserve his rights. With the contention of the defendants that there was no contract entered into providing for the payment of solicitors' fees, and that payment may be recovered where there is a fund involved in the litigation which might be termed a common fund, we cannot agree.

Another question is involved, and that is, was the allowance of $500 to William Feldman, the attorney appointed by the court to represent all the unnamed beneficiaries, subject to criticism. What we have said with reference to the allowance of attorneys' fees will apply equally to the allowance of $500 to Mr. Feldman for services rendered. But it does not appear that such allowance was appealed from, or that any question was raised affecting the right of Feldman to retain the money for the services which no doubt were rendered. In view of the fact that the question is not properly before us, there is nothing the court can do but consider that the allowance has been waived by the parties.

For the reasons stated in this opinion the decree directing the trustee to pay out of the trust estate to Harold R. Schradzki, Sims & Stransky, Arthur W. Sprague, Earle G. Kallen and Joseph Robinson, a fee of $7,500 for services rendered as attorneys in the above entitled cause is reversed.

*Decree reversed.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.