Hartley B. COMFORT, Clarence R. Comfort, Viola Comfort, Samuel T. Comfort and Edward W. S. Owens, Plaintiffs-Appellants,

v.

Jennie C. HIGGINS, Lucia Lee Bates, Dr. James L. DeFoe, Rev. William J. Williamson, Rev. S. H. Wainwright, Rev. J. Layton Mauze, Robert M. Nichols, Trustees, St. Louis Women's Christian Association, a pro forma decree corporation, Memorial Home, Inc., a not-for-profit corporation and John M. Dalton, Attorney General of the State of Missouri, Defendants-Respondents.

No. 60647.

Supreme Court of Missouri, En Banc.

Dec. 18, 1978.

Rehearing Denied Feb. 13, 1979.

Carroll J. Donohue, Alan B. Hoffman, T. Hartley Pollock, St. Louis, for plaintiffs-appellants.

Norman C. Parker, St. Louis, G. Michael Bauer, Asst. Atty. Gen., Jefferson City, for defendants-respondents.

SEILER, Judge.

This cause was transferred pursuant to Mo.Const., art. V., § 10, and rule 83.01 upon certification by a member of the court of appeals, St. Louis district, that the majority opinion, holding that the settlor of the trust involved herein established the same with a general rather than a specific charitable intent, was in conflict with prior opinions of this court and the court of appeals.[1] Portions of the opinion of the court of appeals and the dissent are used below without quotation marks. We reverse and remand.

Plaintiffs-appellants (appellants) appeal from a judgment against them in two consolidated causes of action. Appellants filed an action, cause No. 217613, on April 10,

---

1. The cases referred to are: *Reed v. Eagleton*, 384 S.W.2d 578 (Mo.1964); *Ramsey v. City of Brookfield*, 361 Mo. 857, 237 S.W.2d 143 (1951); *Rice v. Hawley*, 239 Mo.App. 901, 203 S.W.2d 158 (1947); and *City of St. Louis v. McAllister*, 302 Mo. 152, 257 S.W. 425 (banc 1924).

1957 against respondents St. Louis Women's Christian Association (SWCA), Memorial Home, Inc. (MHI), and the seven trustees named in a trust instrument dated August 29, 1912. The trust made the trustees legal owners of property on which Memorial Home Board, (predecessor to Memorial Home, Inc.), an auxiliary of SWCA, was to establish a Home for the Aged, to be called Baxter Protestant Memorial, in memory of the settlor's father, on the ancestral land of the settlor. Appellants claimed that the trust failed, that it had been established by the settlor with a specific rather than a general charitable intent, and therefore that title to the trust property should be quieted in them as heirs of the settlor either by reversion or by virtue of a resulting trust.

On January 9, 1961, MHI filed an action, cause No. 238649, seeking to quiet title to the real property in it subject to the trust. The two cases were consolidated for trial in 1974.

In August 1975, the trial judge filed his fifty-one findings of fact and twenty-three conclusions of law. He found that the settlor evinced a general charitable intent, the trust had not failed, and that appellants thus had no claim to the property and denied them relief. He quieted title in MHI in fee simple for the charitable and benevolent uses mentioned in the 1912 deed. In addition, the trial court purported to award to MHI the amount paid into the registry of a different division of the circuit court as the result of a public utility condemnation proceeding concerning the property.

The deed by which the settlor, Mourning B. Hardy, set up the trust in question is as follows, in pertinent part:

"This deed made and entered into this the 29th day of August, 1912 by and between Mourning B. Hardy, widow of Robert A. Hardy of St. Louis County, Mo., party of the first part and Jennie C. Higgins, Miss Lucia Lee Bates, Dr. James L. DeFoe, of St. Louis Co., Mo., and Rev. Wm. J. Williamson, Rev. S. H. Wainwright, Rev. J. Layton Mauze, and Robert M. Nichols, of St. Louis, Mo., parties of the second part, and the St. Louis Women's Christian Association, and its auxiliary mentioned in Article II and known as 'Memorial Home,' a corporation, located and doing business in the City of St. Louis, Mo., party of the third part,

"WITNESSETH: That Whereas it has pleased God to give to the party of the first part herein by inheritance from her father, John Baxter, the real estate and property hereinafter described, which was his homestead settled by him in 1836, and upon which is situated his house built of hewn timber by him in 1836; and

"WHEREAS, the said party of the first part is desirous of keeping in living memory the record of his generosity by establishment of a home upon the property hereinafter described for aged men and women and aged men and their wives upon the conditions and such as is carried on by the St. Louis Women's Christian Association in its auxiliary, the Memorial Home, as aforesaid:

"NOW, THEREFORE, in consideration of the premises and the sum of one dollar to the said party of the first part in hand paid by the party of the third part, the receipt of which is hereby acknowledged, the party of the first part does by these presents grant, bargain and sell, convey and confirm, unto the said parties of the second part herein, or their survivor or survivors, successor or successors, upon the trusts, uses and purposes hereinafter designated, subject, however, to an estate therein for the life of the said grantor, Mourning B. Hardy, party of the first part or reserving from said grant unto said Mourning B. Hardy, party of the first part, an estate during her natural life, the remainder after the life estate so reserved to the said grantor herein, in and to the following described real estate situated in the County of St. Louis, State of Missouri, and particularly described as follows to wit:

[a description of the land follows]

"The said second parties herein or their sucessor [sic] or successors, shall suffer

the said party of the third part herein to establish upon said premises, under its present rules and regulations, a farm Home for aged men and aged women and aged men and their wives, and to that end and purpose the party of the third part herein shall do all acts and things necessary to provide shelter and subsistence from the cultivation of the soil, or otherwise, to ameliorate the condition of the poor, weak, aged and helpless, as is now presently carried on in the said auxiliary known as the 'Memorial Home' the grant herein, however, is upon the condition that if at the falling in of the life estate herein reserved in favor of said grantor Rebecca Baxter, the widow of Hartley S. Baxter and Mrs. Meekie Kinkead, or either of them, should be alive, then the said Memorial Home and the said beneficiary herein shall cause the said Rebecca Baxter or Mrs. Meekie Kinkead to be cared for with all the necessaries of life found to them and protected in the home intended hereby to be established. And upon further condition that the property herein conveyed and the establishment of the same be forever known as the 'Baxter Protestant Memorial.' The said parties of the second part To Have and To Hold the said above described real estate in trust, as aforesaid, subject to said life estate herein reserved in favor of said grantor, and subject to any incumbrances that may be existing upon said property, and to their successors and assigns forever; . . . "

The property was initially in the name of John Baxter and passed upon his death in 1887 to his children, Hartley Baxter and Mourning Hardy (settlor). In 1894 Hartley Baxter and his wife conveyed their interest to Mourning. Mourning's husband died on February 7, 1912. Settlor died February 25, 1917.

The parties have presented this court with numerous exhibits which recount the history of the usage of the Baxter property. The facts are as follows:

Since about 1881, MHI, one branch of SWCA, has maintained Memorial Home, a residence home for the elderly in the City of St. Louis. In addition to the maintenance of Memorial Home, SWCA has controlled Women's Christian Home (organized 1868), Blind Girl's Home (organized 1867), Russell Home (organized 1907) and Catherine Springer Home (organized 1919).

Upon the death of Mourning B. Hardy, MHI assumed control of the Baxter property subject to a $3,000.00 mortgage which MHI subsequently retired. At the time of Mrs. Hardy's death, the principal building on the property was a house of rough hewn timber constructed in 1836. The two-story house was approximately 30 feet by 40 feet in dimension. It had neither running water, plumbing, electricity nor central heating.

Between 1918 and 1943, MHI made various repairs and improvements to the building, including painting and installation of bathroom facilities. The evidence shows that during these years MHI never used the building as a year-round residence home for the elderly. Rather, small groups of the residents of Memorial Home were taken to the Baxter property for short summer outings between 1918 and 1943. However, for a number of intervening years the building was not even open because the Memorial Home residents preferred the comforts of Memorial Home to the rigorous conditions of the Baxter property, or because those residents who enjoyed the summer outings were considered too frail to go. On account of storm damage in 1939 and severe vandalism, the building deteriorated and a decision was made to demolish it. Since 1943, there has been no structure on the Baxter property.

The acreage surrounding the building has been leased for farming purposes since 1918 and MHI has paid all the taxes. There is evidence that the trustees participated in the management of the property until the last surviving trustee, Dr. DeFoe, died in 1944. SWCA's charter expired in 1932 but was revived in 1937.

In 1955, Memorial Home Board was incorporated as Memorial Home, Inc., (MHI). In 1956 SWCA quitclaimed all of its inter-

est in the Baxter property to MHI. In addition, all assets held by SWCA for the benefit of Memorial Home were transferred to MHI.

Between 1957 and 1974, MHI continued to pay the property taxes on the Baxter property, rejecting all offers of sale, formed a Baxter Road Development Committee, drafted several resolutions endorsing development of a home on the property, and commissioned three sets of architectural drawings and a development feasibility study. No actual construction of a Home was commenced, nor was any application made for a zoning change or any detailed plans for construction of a Home drawn up. No new trustees were appointed once the original trustees died.

Testimony at trial consisted primarily of the examinations of Hartley Comfort and of several members of the MHI Board. Hartley Comfort described his childhood contacts with Mourning B. Hardy and his negotiations to purchase or lease the property with MHI board members in the 1940's and 1950's. The witnesses for MHI uniformly testified that MHI still had every intention of establishing a Home on the Baxter property once the Comfort litigation was resolved. In addition, the attorney general submitted evidence as to the need for housing for the elderly by the testimony of Daniel J. MacDonald, Jr., executive director, Health and Welfare Council of Metropolitan St. Louis.

Appellants, the Comforts, claim a reversionary interest and, alternatively, a resulting trust in the subject property. As grounds for their claim, appellants assert first that the trust has failed because: the trustees failed to fulfill the purposes of the trust within a reasonable time; the trustees have abandoned the purposes of the trust; and it is impossible or impracticable to accomplish the objectives of the trust in accordance with the settlor's specific charitable intent; and second, that the settlor had a specific charitable intent in establishing the trust, and thus that upon failure of the original trust purpose *cy pres* is not available and the trust property must return to

them. The respondents reply that the trust has not failed, was formed with a general charitable intent, and that title to the property should thus be quieted in them. They do not ask us to apply *cy pres* to the trust in the event we find that its original purpose has failed, but simply to hold that, if the purpose is general, then the heirs, appellants, have no interest and title must thus be quieted in respondents.

## I.

Our first inquiry must be into the specific purpose and intent of the settlor in creating the trust, as evidenced by the words of the trust instrument. We disagree with the conclusion of the respondents that the primary purpose of the settlor was to aid the "poor, weak, aged and helpless" and of the trial court, in finding No. 7, that it was to maintain the homestead as a memorial to her father, primarily through farming. The language of the trust instrument, quoted above, makes clear that the primary purpose of the settlor was, specifically, to establish a Home, to be called Baxter Protestant Memorial, for aged men and women and aged men and their wives upon the conditions and under the rules and regulations then existing in Memorial Home, in order to keep "in living memory the record of" her father's generosity.

Although the trust instrument does not state explicitly whether the Home is to be in the cabin built by the settlor's father on the property, or is to be a separate structure, the words used and the facts show it to be the latter. The use of the word "establish" so indicates, as does the fact that the Home was to be established "on like terms and conditions" to Memorial Home. The cabin had no running water, plumbing, or other facilities, and contained only two or three bedrooms, while Memorial Home held from 95 to 101 persons during 1912 and was a year-round facility with all normal comforts. Clearly a new structure would have to be built (or a material enlargement of the old structure be made) in order to make even a somewhat comparable Home on the trust property. The exact

manner of establishing the Home was left to the trustees and SWCA and MHI, who were, to the "end and purpose" of establishing a Home on the premises under Memorial Home's rules and regulations, to "do all acts and things necessary to provide shelter and subsistence from the cultivation of the soil, or otherwise, to ameliorate the condition of the poor, weak, aged and helpless," that is, the type of person who resided in Memorial Home and who the settlor wished to reside in the Home to be established on her property. From the language of the instrument, we conclude that this included the building of a Home and that the trial court erred in construing the instrument otherwise.

## II.

■ Having determined the settlor's intent, we now must decide whether that intent has been carried out, or is likely to be carried out, or whether the trust has failed. Unless and until it is determined that the trust has failed, the question of general or specific charitable intent is irrelevant. *Levings v. Danforth*, 512 S.W.2d 207, 211 (Mo.App.1974); *City of St. Louis v. McAllister*, 281 Mo. 26, 218 S.W. 312, 317 (banc 1920). If failure of the trust is determined, and if the settlor's intent was specific, then a resulting trust or reversion for the settlor or his heirs will result. *City of St. Louis v. McAllister*, 302 Mo. 152, 257 S.W. 425, 427 (banc 1924); *Reed v. Eagleton*, 384 S.W.2d 578 (Mo.1964). If it is general, then the court will not decree a reversion or resulting trust, but will permit the trust to continue. If requested, *cy pres* may be applied in the future. *Ramsey v. City of Brookfield*, 361 Mo. 857, 237 S.W.2d 143, 145–146 (1951).

We conclude that the trust has failed, for the reason that the expiration of more than a reasonable time has elapsed without any substantial step towards fulfillment of its purposes. *See generally* 14 C.J.S. Charities § 44 (condition to grant must be performed within a reasonable time, to be determined by facts and circumstances). As stated in *Rohlff v. German Old People's Home*, 143 Neb. 636, 10 N.W.2d 686, 691 (1943):

"[I]t is incumbent upon a charitable corporation to carry out its purpose and that of the donor within a reasonable time where no general charitable intent is found in the bequest, otherwise the gift will revert to the donor, if living, or to his heirs, if he be deceased."

*See Perry v. Town of Friendship*, 237 A.2d 405, 408 (Me.1968).

■ That Missouri has adopted the principle that the donor's intent must be carried out within a reasonable time is apparent from a reading of *Rice v. Hawley*, 239 Mo. App. 901, 203 S.W.2d 158, 162 (1947). In that case, the testator bequeathed part of the residue of his estate to the trustees of the "Odd Fellows Lodge No. 85 of Neosho, Mo. for the purpose of building a hospital in the City of Neosho, Mo." *Id.* at 160. While the claim of the heirs of the testator was premature, (the suit was to determine to whom the trustee should pay out the money, it apparently never having been given the Lodge, despite the fact that twenty-one years had elapsed between the testator's death and the suit), the court stated that if the trustees of the lodge fail to use the remainder of such estate in the manner intended by the testator "within a reasonable time, it should revert to his estate." *Id.* at 165.

The respondents and the trial court apparently misconstrued the argument that the trust had failed because more than a reasonable time had elapsed as constituting an allegation of breach of trust. If this were the allegation, then as concluded by the trial court in conclusions of law Nos. 17 and 18, the attorney general, not the appellants, would be the proper party to sue, IV Scott on Trusts, § 401.1, at 3139 (3d ed. 1967); Bogert, Trusts and Trustees, § 418, at 366 (2d ed. 1977); Restatement (Second) of Trusts, § 401, Comment a (1959), and he would sue for enforcement of the trust terms, not for a reversion or resulting trust. *Lewis v. Brubaker*, 322 Mo. 52, 14 S.W.2d 982, 988 (1928); *Glaze v. Allen*, 213 S.W. 784, 785 (1919); IV Scott on Trusts, § 401.1, at 3139 (3d ed. 1967). However, the appel-

lants do not allege breach of trust, nor make any accusations against the trustees directly, but simply allege failure of the trust altogether. In such a case:

"To allow the trust property to remain as it is means its uselessness in the present . . . It should either be applied in such a way as to effectuate the general charitable intent of the testatrix, if such intent can be found, by invoking the doctrine of cy pres, or it should be held to belong to the heirs at law on the ground of a lapsed devise." *Gilman v. Burnett*, 116 Me. 382, 102 A. 108, 109 (1917).

Respondents assert that the cases cited above are not in point because in them the court found a specific rather than a general charitable intent. First, as will be gone into below, we think the settlor's intent was specific in this case also. Second, respondents' argument is not responsive to the question of failure of the trust. Rather, it goes to the second and independent inquiry into intent which is made only after a determination of failure has been made. Appellants' authorities are thus quite relevant to a determination of whether or not the trust has failed.

The facts adduced at trial leave no doubt that more than a reasonable time has elapsed within which accomplishment of the trust purposes should have been at least substantially begun. The settlor died in 1917. Suit was not instituted until 1957. During the intervening forty years, as noted above in setting out the facts, no Home was established. Except for visits of a few weeks during the summers until 1943, the property was not used except for farming. No effort to modify the trust to make its purposes more readily attainable was made. The trust property was referred to by MHI as "Baxter Heights" or "the farm", and not as "Baxter Protestant Memorial", although signs bearing the latter name were erected on the property from time to time. In short, none of the purposes of the trust

were accomplished within that period. Yet the settlor indicated an intent that these purposes be fulfilled quickly by providing that the Home should be established under the "present rules and regulations" of Memorial Home, and by providing that a friend and a relative of the settlor should be cared for in the Home if they outlived her, indicating a desire and belief that the Home would be established sufficiently promptly to accommodate them.

Respondents argue that circumstances beyond their control prevented implementation of the trust up to the time suit was filed in 1957, and that since that time the cloud on title caused by the pendency of this suit has as a practical matter prevented further action by them. They point to architectural plans and a feasibility study prepared or revised in 1961, 1964, 1971, and 1972,[2] and to transfer of $834,040 to a construction fund in 1972 as evidence of their intent to build once their title to the property is established. We express some doubt that the act of preparing a few very general sketches of a proposed building could support an inference of implementation of the trust agreement in light of failure to seek a zoning change or permit to allow construction, failure to adopt any of the plans, failure to detail or implement them, and in light of the use of the construction fund money for other purposes when needed. In any case, if the forty years that had passed before these actions were taken were more than a reasonable time, later actions could not change that fact. Furthermore, if various factors, including lack of funds, World War II, uncertainty as to the proposed route of Highway 270 across the property, and this suit, effectively prevented implementation of the trust purposes for what is now more than sixty years, there is no reason to think other circumstances will not prevent its future implementation. Certainly the above factors affect a determination of what is a reasonable time, but they do not suspend it.

**2.** There was testimony as to plans drawn up in 1950, but these were never introduced, no details of them could be provided and in further testimony the witness stated that she had actually seen them sometime during Mrs. Atkin's tenure as President of Memorial Home Board, between 1952 and 1957.

Whether "a reasonable time" is measured as of the institution of suit, or as of the present time, we conclude that the trust has failed because unreasonable delay in its implementation has occurred and the conclusion of the trial court to the contrary erroneously applies the law.[3]

### III.

We now reach the second part of our inquiry, whether the settlor evinced a specific or general charitable intent in creating the trust. Specific intent will be found:

"where it is determined that the settlor's intent was to aid that kind of charity *only* in a particular way or by a particular method or means, that he intended to make no gift to that general kind of charity other than by the specified particular means, that he intended that, if the specified particular means failed, the gift failed, and that the corpus of the trust estate could no longer be used for the general type or kind of charity he desired to assist." *Ramsey v. City of Brookfield,* 237 S.W.2d at 146.

Thus, in *Ramsey* the court found general charitable intent where the testator excluded his collateral heirs in his will. In that case, the testator bequeathed the residue of his estate "for the sole purpose of building and equipping and maintaining a City hospital. It is further my will that said hospital be located within the said City of Brookfield, Missouri, and that this bequest be used for hospital purposes and no other." *Id.* at 144. The evidence showed, first, that the trust had not failed because it was not clear that the city had totally abandoned the idea of building a hospital, and second, the above-quoted words "for *hospital purposes* and no other" evinced a general charitable intent.

In *Thatcher v. Lewis,* 335 Mo. 1130, 76 S.W.2d 677, 683 (1934) the court broadly stated that "[u]nquestionably, when the intent is to apply the gift to a continuing problem, there is a general charitable in-

tent." This comment, of course, must be read in light of the fact that most charitable gifts are to some degree made to ameliorate a continuing problem, hence their charitable nature. Thus, gifts are to aid education, science, literature, the poor, the sick, and so on. The *problem* is of course continuing. The question is whether the settlor or donor intended to benefit all those affected by the continuing problem, or only certain of those persons. In *Thatcher,* the settlor had directed one-third of his estate be used to establish a monetary fund in St. Louis to aid needy, western travelers. The fund had been successfully so used for a number of years but an excess of monies existed and the court applied *cy pres* and concluded that this excess could be used for similar but different purposes in keeping with what it found to be the general charitable intent of the settlor. *Id.* at 681–82. Courts are more willing to find such a general intent where a trust has been successfully implemented for a long period. *Thatcher v. Lewis,* 76 S.W.2d at 682; *see* IV, Scott on Trusts, § 399.3, at 3111 (3d ed. 1967). Additionally, in *Ramsey* and in *Thatcher* the gift in question was a monetary one. In the present case, the trust property was the land settled by the settlor's father. This fact has been viewed by some courts as strong evidence of an absence of general charitable intent. *Gilman v. Burnett,* 102 A. at 110; *Fidelity Union Trust Co. v. Laise,* 142 N.J.Eq. 366, 60 A.2d 250, 254 (1948); *Waterbury Trust Co. v. Porter,* 131 Conn. 206, 38 A.2d 598, 603 (1944).

The absence of any direction for a reversion to the settlor in the case of failure could indicate a general charitable intent, *Thatcher v. Lewis,* 76 S.W.2d at 683; Bogert, Trusts and Trustees, § 437 (2d ed. 1977). However, this result is generally reached where the heirs were either specifically excluded, *Ramsey,* 237 S.W.2d at 146, or had received other gifts in the will, thus indicating that no further gifts were in-

---

**3.** Because of our resolution of the above issue, we do not reach the question whether the trust has failed because its purposes have been aban-

doned, or are impossible to perform. We note only that similar factors would apply to an inquiry into these issues.

tended, *Levings v. Danforth*, 512 S.W.2d at 211–12; *Thatcher v. Lewis*, 76 S.W.2d at 683. Here, the trust was an inter-vivos one, and thus no inference can be made that the settlor purposely excluded her heirs.

■ Additionally, the language and terms of the trust itself indicates specific intent. A gift was made in trust, rather than outright. Rather than providing that it be used for the general benefit of the persons in Memorial Home, who are the same class of persons as would be benefited by the trust, it specifically provided that a Home, to be known as the "Baxter Protestant Memorial", was to be established, indicating a desire for a permanent memorial to the settlor's father. Moreover, the language of the trust states that Memorial Home was "*to establish* upon *said premises*, under its *present rules and regulations*, a farm Home for aged men and aged women and aged men and their wives, and to *that* end and purpose" (emphasis added) to provide shelter and cultivate the soil to ameliorate the condition of the weak, etc. Contrary to the trial court's conclusions of law Nos. 1–3 that the grant constituted a general charitable trust, it is clear that the settlor had a specific intent to create a Home, of the type carried on by Memorial Home, in memory of her father, on the property which he had bequeathed to her. Only toward *that* end and purpose was it to provide shelter and subsistence. For the settlor to have evinced a general intent, she would have stated that to the end and purpose of helping the aged she wished to set up the Home, rather than the converse as was here done. Only in that way could a court conclude that the trustees could use means other than those specifically provided for in order to effectuate the trust purposes. Here the setting up of the Home, as described, was an end, not a means. The ultimate reason for that end must of necessity have rested in some part on a general concern for the plight of the aged, but only in the sense that all charitable gifts, whether made with specific or general intent, are to some extent a result of a general concern for the cause benefitted. The nature of a charitable trust should not be confused with the nature of the settlor's intent. Here the settlor's more specific intent was to set up a Home to commemorate her father in a specific manner.

We thus conclude that the trust has failed and that it was established by the settlor with a specific charitable intent. The property must revert to the heirs of the settlor, appellants herein. *Gilman v. Burnett*, 102 A. at 109; *Rice v. Hawley*, 203 S.W.2d at 165.

## IV.

We also address two other issues.

First, the appellants argue that the trial court erred in quieting title in MHI. We agree MHI's claim to title in the property is founded on the existence of a quitclaim deed dated October 12, 1956, executed by the president of SWCA, purporting to convey SWCA's interest in the property to MHI. As the grantee, MHI could take only such interest in the property as SWCA, the grantor, could convey. *Smith v. City of St. Charles*, 552 S.W.2d 60, 62 (Mo.App.1977); *Land Clearance for Redevelopment Authority of Kansas City v. Dunn*, 416 S.W.2d 948 (Mo.1967); *Reasor v. Marshall*, 359 Mo. 130, 221 S.W.2d 111 (1949). Thus, it is necessary to determine what interest, if any, SWCA had in the property.

The MHI theory, adopted by the trial court as conclusion of law No. 10, was that the deed imposed "no active duties upon the trustees" and that the Statute of Uses, § 456.020, RSMo 1969, thereby came into effect to vest title in SWCA, and through the quitclaim deed in MHI.

First, the trust was not a dry one. The deed transferred the legal title to the trustees rather than directly to SWCA and MHI in order that the former could "suffer the said party of the third part [SWCA and MHI] herein to establish upon said premises, under its present rules and regulations, a farm Home . . ." The instrument could thus be considered to give the trustees some supervisory control over the actions SWCA and MHI. In fact, the record shows that various trustees were consulted

over the years before decisions were made as to whether to sell or repair the property and cabin. Since the trust could be read to imply duties, and since active duties were in fact undertaken, we conclude that the trust was not a dry one.

Additionally, even if the trust were dry, it would not have caused legal title to be vested in SWCA by the Statute of Uses. The Statute of Uses merges legal and equitable title in the beneficiary where no substantial duties are given to the trustees, *Farkas v. Calamia*, 373 S.W.2d 1 (Mo.1963). However, neither SWCA nor MHI were the beneficiaries of the trust. Rather, they were the persons who were to establish and manage the Home, Baxter Protestant Memorial, under the supervision of the trustees. The beneficiaries, as must be true in the case of all charitable trusts, are not specifically identifiable. *Ramsey v. City of Brookfield*, 237 S.W.2d at 145. As a group, they were the "aged men and women and aged men and their wives" who were the intended residents of the Baxter Protestant Memorial. Legal title could thus not merge in SWCA by following the equitable title, for SWCA did not hold the equitable title. The trustees never attempted to transfer title to SWCA or MHI. Consequently, MHI gained no title by the quitclaim deed from SWCA and thus title could not properly be quieted in it even if we had not found a reversion in appellants.

On the second issue, appellants correctly assert that the trial court had no authority to decree the disposition of the condemnation award paid into a different division of the circuit court. Both sides filed exceptions to the award, which apparently were still pending when this appeal was briefed and argued. Once a division of the court acquires jurisdiction of the subject matter of a suit, it holds it to the exclusion of all other courts of concurrent jurisdiction. *Koplar v. Rossett*, 355 Mo. 496, 196 S.W.2d 800, 806 (banc 1946); *State ex rel. Banner Loan Co. v. Landwehr*, 324 Mo. 1142, 27 S.W.2d 25, 28 (1930); *Goddard v. Delaney*, 181 Mo. 564, 80 S.W. 886 (1904). The award on deposit is considered a fund in litigation which cannot be distributed to the rival claimants without an order of the court. *State ex rel. State Highway Commission v. Paul*, 368 S.W.2d 419, 423 (Mo. banc 1963).

The judgment is reversed and the cause remanded with directions to enter a decree dissolving and terminating the trust established by the deed of August 29, 1912 and vesting plaintiffs with fee simple title in equal shares in and to the land in question and decreeing further that the defendants have no right, title, claim or interest in any of said real estate or any lien thereon and are enjoined from asserting any right, title or interest in and to said property.

MORGAN, C. J., and FINCH and RENDLEN, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

DONNELLY, J., dissents and concurs in separate dissenting opinion of BARDGETT, J.

SIMEONE, J., not participating because not a member of the court when cause was submitted.

BARDGETT, Judge, dissenting.

As indicated in the principal opinion, the primary issue in this case is whether the settlor had a general charitable intent or if the primary purpose of the settlor was specifically to establish a particular home to be called Baxter Protestant Memorial for the purpose of keeping "in living memory the record of" her father's generosity. The majority in the court of appeals concluded the settlor evidenced a general charitable intent. The principal opinion in this court is to the contrary. I am in agreement with the court of appeals in the matter and, therefore, I dissent.